### The State v. Joshua Smith.

An indictment for malicious mischief which charged that the defendant "wilfully and wantonly did maim, wound, and cruelly and unmercifully beat and abuse one swine, a dumb animal, then and there, being the property of ———, against the peace, &c., omitting the name of the owner of the animal, was defective in omitting to state that such animal was the property of another.

Appeal from Anderson.    Tried below before Hon. John Gregg.

Indictment for malicious mischief quashed, upon motion of defendant, because it did not aver the name of the owner of the animal, or that the owner's name was unknown, and because it did not aver that the animal was not the property of defendant.

*Attorney General*, for the State.

*E. H. Horrell*, for appellee.

ROBERTS, J.    This is an indictment for malicious mischief under 714th Article of the Penal Code, which reads as follows, to-wit:

" Art. 714. If any person shall wilfully and wantonly kill, maim, wound, poison, or cruelly and unmercifully beat and abuse any dumb animal—such as is enumerated in the preceding Article—he shall be fined, not exceeding two hundred and fifty dollars."

The enumeration in the preceding Article is as follows:

The State v. Smith.

"Any horse, gelding, mare, jack, jinny, colt, cattle, sheep, goat, swine, or dog, of another."

The indictment charges that the defendant "wilfully and wantonly did maim, wound, and cruelly, and unmercifully beat and abuse one swine, a dumb animal, then and there being the property of ———, against the peace," &c. ; omitting the name of the owner of the animal.

The question is, must it be made to appear in the indictment that the animal abused is not the property of the defendant?

If the quality, of its being the property "of another," be applied to the last Section, as well as to the preceding, that settles the question. But if it cannot be so construed, then it is necessary to regard the last Article in connection with its general objects, and with the other Articles which bear a relation to it. The object of the preceding Article (713) is designed to reach the wicked malignity and spite, which may be harbored against the owner, which dastardly vents itself upon his dumb animal, because it belongs to him. Its punishment may be ten times the amount of the injury. The next Article, (714,) which imposes a much lighter punishment, is intended to prevent wanton cruelty to such animals of another though the trespasser may not inflict it through grudge to the owner, or if it exist, it cannot be proven. Or it is intended to prevent wanton cruelty to such animal, whether inflicted by the owner or another, as a humane protection to the dumb animal. It is legitimate to consider what was the idea of malicious mischief before the adoption of the Penal Code as a means of interpreting what was meant by this Article. At Common Law, it was "any malicious or mischievous injury, either to the rights of another, or to those of the public in general." (Wh. A. C. L. 2202.) However general and unsatisfactory such a definition may be, it serves to point out that it must be the property of another. Cruelty

to animals by the owner had to be attended with such enor-
mity and publicity, as to amount to a nuisance, or something
in the nature of a nuisance, before it was treated as an offence;
and, therefore, it did not fill the idea of malicious mischief,
although the mere act of cruelty might be the same so far as
the animal was concerned. (U. S. v. Logan, Cranch C. C.
R. 279 ; U. S. v. Jackson, 4 Ib. 483.)

Our previous Statutes carried out the Common Law idea
of malicious mischief by adopting in the Criminal Law two
Sections, similar to those Articles in the Code, (713, 714,) in
both of which, the animal injured was expressly required to
be the property of another, the only difference between them,
as to the character of the offences, being as to the intention
to injure the owner. In one, such intention was a necessary
ingredient in the offence, in the other not. (Hart. Dig. Art.
520 and 560.)

This Article (714) is to be found under the general title in
the Code, " Of offences against property other than Slaves,"
and in a Chapter, headed "Malicious Mischief." In several
of the Articles of that Chapter the words "the property of
another," must necessarily be supplied by intendment. As
the intentionally pulling or tearing down any wire, post, &c.,
of a telegraph, &c., in Art. 710. As wilfully and mischiev-
ously injuring or destroying any growing fruit, corn, grain,
&c., in Art. 716.

The object of this title in the Code is to protect property
by the penal sanctions of the law. The notion of protection
of property is always associated with the idea of its possible
injury by another not the owner. The owner's inducement to
protect it, is strong enough usually, without the aid of com-
pulsion. If we must supply the words "the property of an-
other," in other articles, as it is obvious must be done, why
not also supply them in this; should we construe them to have
been omitted. It cannot be, from the existence of any known
evil in this country, which would require a change of our for-

mer laws, so as to protect them from the cruelty of their own-
ers. For such does not exist here, except as an accidental
occurrence.

Again, the Article, last quoted, contains an implied legisla-
tive construction, as to what was the object of this Chapter
by the use of the word mischievous in connection with fruit,
corn, &c. ; from which it is deducible plainly that their idea
of malicious mischief, like that of our previous laws, written
and unwritten, necessarily connected itself with and imported
the injury of the property of another.

It is not the policy of the law, in this country, to establish
an espionage over the domestic concerns, by which every in-
termeddling, malicious neighbor may have an excuse, on the
ground of humanity, to thrust his own ideas of propriety or
morality into the private affairs of others around him. The
encouragement it would give to make humanity the cloak of
malice and envy, would be a worse evil, by producing dissen-
tions in the community, than any amount of cruelty to dumb
animals, known to exist. Our slaves are protected from the
cruelty of masters by law, because they are persons as well
as property. All other property in animals is wisely left to
the sufficient protection of self-interest of the owner, and the
prevalent moral sentiment on that subject.

We think, therefore, that this indictment is defective in not
showing that the swine was the property of some other per-
son, and not that of the person inflicting the injury.

Judgment affirmed.