## FAIRFAX BRANCH v. THE STATE.

1. MALICIOUS MISCHIEF.—To constitute malicious mischief under art. 2345, Pas. Dig., the killing or other act enumerated in that section, when inflicted on the dumb animal, must not only be willfully, but wantonly done, without excuse, and under circumstances evincing a lawless spirit.

2. WILLFUL KILLING OF AN ANIMAL—WHEN NOT MALICIOUS MISCHIEF.—The killing of an animal which was in the habit of trespassing on one's crop during an act of trespass, not from wantonness, but to prevent destruction of crops, is not the malicious mischief contemplated in sec. 2345, Pas. Dig.

APPEAL from Smith.    Tried below before the Hon. M. H. Bonner.

*George Clark, Attorney General*, for the State.

REEVES, ASSOCIATE JUSTICE.—The indictment charges appellant and John Lawler with killing a hog belonging to John Wilson, and avers that it was done unlawfully, willfully, and wantonly, and appellant being convicted and fined five dollars, he prosecutes this appeal.

The indictment was found under the statute punishing malicious mischief, and which provides, in art. 2345, Pas. Dig.: "If any person shall willfully and wantonly kill, maim, wound, poison, or cruelly and unmercifully beat and abuse any dumb animal, such as is enumerated in the preceding article, he shall be fined not exceeding two hundred and fifty dollars."

The preceding article provides: "If any person shall willfully kill," &c., any of the animals enumerated, includ-

ing "swine," "with intent to injure the owner thereof, he shall be fined," &c.

It is not necessary to notice all the grounds of the motion for a new trial, nor to examine with much particularity the motion in arrest of judgment. The indictment is sufficient in form, and the judgment recites that the jury, after being impaneled and duly sworn, returned into court their verdict, assessing a fine of five dollars, setting out the verdict in usual form. There is doubtless some inaccuracies in the dates as found in the transcript. The clerk's indorsement recites that the indictment was filed December 5, 1872, when it is stated that the bill was returned into court December 5, 1873. One of the witnesses says that the animal in question was shot about September, 1874; and it appears from the record that the trial took place at that time. These are probably clerical mistakes, and do not require further examination.

One of the grounds of the motion for a new trial is that the verdict of the jury was contrary to the law and the evidence.

It was proved on the trial that the hog was found dead in the branch in Mrs. Marsh's farm, where it was shot. Corn and cotton were cultivated on the farm, though it does not appear that the place where the hog was found was separated, by a fence or other protection, from the crop. It is described as being in the farm, but at a place overgrown with bushes and vines, forming a dense thicket, with growing corn beyond it. The father of the defendant, Branch, was a renter, and cultivated part of the farm, and the defendant, as shown by the evidence, was seen in company with John Lawler at the time they shot the animal, (Lawler being jointly indicted with defendant, but not on trial.) It was further shown that defendant, Branch, was seen at work on the farm some time after this occurrence, but whether on his father's crop, as most likely he was, or some other part of the plantation, is not clearly shown.

The conversation between him and the witness at the time here alluded to, and his answer to the question asked him by the witness, tend strongly to prove that he killed the hog, and was no doubt so understood by the jury. Taken in connection with other evidence adduced on the trial, the act of killing may be regarded as established, and, so regarded, the material inquiry is, whether the evidence warranted the conviction for a willful and wanton killing. This offense, (as defined by Blackstone, vol. 2, book 4, 197, 243,) "is such as is done, not *animo furandi*, or with intent of gaining by another's loss, which is some, but a weak excuse, but either out of a spirit of wanton cruelty or black and diabolical revenge."

The common law does not punish cruelty to animals, except in so far as it affects the right of property of individuals, and the injury or damage done the owner was but a trespass. The statute of 9 Geo. I, provides: "If any person shall unlawfully and maliciously kill, &c., any cattle," &c.

The construction given to this statute was that the malice must be directed against the owner of the cattle, and not merely against the animal. (2 East's Crown Law, 1072, 1074.)

It was also held that an indictment at common law for unlawfully maiming a horse, to the damage of the owner, was only a trespass, and not sufficient to support an indictment. (2 East's Crown Law, 1072, 1074.)

This court held, in the case of Illies *v.* Knight, 3 Tex., 312, that "an injury to personal property, though committed with actual force, is not indictable at common law, unless accompanied with a breach of the peace."

The statute protecting animals from willful and wanton acts of cruelty must be construed with reference to that peculiar offense. (Art. 2345.) Under this article the killing and other acts enumerated must be not only willfully, but also wantonly done, and must be directed towards the

animal itself, as distinguished from a willful killing, &c., with intent to injure the owner, as in the preceding article, (2344,) a depraved mind and cruel disposition being common to both. The act must be done intentionally and by design, and without excuse, and under circumstances evincing a lawless and destructive spirit. If the act was only a trespass, it would not be punishable as malicious mischief under the code, because it was charged to be done willfully and wantonly. (Wharton's Am. Cr. Law, 2003; Kilpatrick *v.* The People, 5 Denio, 277.)

A trespass may be willful without being wanton, according to the intention; and if the intention cannot be inferred from the act itself as being the promptings of no other than a bad motive, and without cause or justification, other circumstances must be proved from which the jury may reasonably infer that the act was done wantonly. It may be done under such circumstances as negative a wanton act, as where an animal is in the habit of trespassing on a man's crop and is killed during an act of trespass, not from wantonness, but to prevent the destruction of his crop. In that case he might be liable to a civil suit for damages, but not to a criminal prosecution for malicious mischief. (Commonwealth *v.* Walden, 3 Cush., 558; Bishop on Stat. Cr., 437, referring to 2 East's Crown Law, 1072, 1073; Wright *v.* The State, 30 Geo., 325; State *v.* Pierce, 7 Ala., new series, 728.)

This would not apply to a case where the crop was not properly protected against trespass by stock.

The charge of the court is expressed in the general terms of the code in substance that the killing must have been willful and wanton to warrant a conviction. No further instructions explaining these terms were asked by the defendant; and without explanation, these terms may not have been fully understood by the jury as applied to the facts.

We are of the opinion that the evidence does not sup-

port the conviction for a willful and wanton killing of the animal in question, and the case is reversed and remanded.

REVERSED AND REMANDED.