## Wm. McGee v. The State.

1. **Theft of an estray.**—In an indictment for theft of an estray it is not necessary that the animal stolen be described as "coming within the meaning of an estray."
2. **Same.**—See facts held insufficient to sustain a verdict of guilty of theft.

Appeal from Freestone. Tried below before the Hon. John B. Rector.

Wm. McGee was indicted for theft of a cow and calf, *being estrays.*

On the trial Lewis Beavers testified that he knew Mc-Gee, and also knew a cow branded X H, which ran on Bonner's prairie in Freestone county, thought to be an estray. The cow had a yearling calf. Defendant has some cattle in the neighborhood; had lived there three or four years; X H is not his brand—at least it was not claimed by him. The calf was not branded. Witness had been told by several that the cow was an estray; she was the only one of that brand in the range; thinks the cow was in the range before defendant moved to the neighborhood. Witness last saw the cattle in the fall of 1874, in the range.

Wilson Shelford testified that he knew the cow branded X H for about two years as an estray; she was generally known as such; defendant got witness and others to assist him to kill the cow and yearling; that defendant, witness, and others hunted some time for the cattle, and when they were about two hundred yards from the yearling defendant said, "That's my yearling." When they found the cow witness told defendant that "he took the cow to be an estray," when defendant replied "he had bought the cow and yearling from Mr. See, and had a bill of sale for them from See at home." They then drove the cow and calf up, and killed them, and took the beef to a neighbor's

house.   Next day they took the beef to defendant's.   Witness got one quarter for his services; so did another party. Witness never saw the bill of sale; never heard defendant say the cow was an estray.   The killing was in the fall of 1874, in Freestone county.   The cow was worth ten dollars, and the yearling five.

Witness knew one Jack See, who lived formerly about five miles below Butler, in Freestone county.   See was back in the neighborhood in the summer of 1874, and had formerly lived where defendant now lives.

The defendant proved by his wife that he bought the cow and calf of Jack See, and paid five dollars, gold, for them in the range—the same cow and calf defendant had killed, and that at the time of the purchase See claimed the cow and yearling.   Defendant wrote the bill of sale, and See signed it in the presence of witness and two others. Defendant wrote See's name, and See made his mark. Leslie witnessed the bill of sale.   See's name was signed "A. J. See."   That defendant's house had been robbed about two weeks before court, when the bill of sale was taken with some notes and money.

J. R. Seely testified that since the indictment he had seen the bill of sale, as described by Mrs. McGee, and had told defendant to preserve it for use on his trial.   Witness was attorney for McGee.

The district attorney, being sworn, testified that he had known one Jack Sea for seven or eight years; has had business transactions with him; had seen him write; he writes his name very well.   Witness exhibited an instrument of writing with the name *D. J. Sea* at the bottom, with marks drawn through it, but still legible, with the signature of some one else, which was signed with a cross mark.   Witness testified that the scratched name was the signature of D. J. Sea; that Jack Sea never wrote his name *A. J. See*, but always *D. J. Sea.*   Witness had seen him write his name frequently, but never saw

him make his mark. D. J. Sea left three or four years ago. Never knew a man named A. J. See.

The court, after defining theft and its punishment, further charged: "3. It is for the jury to say from the evidence whether the name A. J. See, which defendant's witnesses say was signed to a bill of sale of the cow and yearling in controversy to defendant, was intended for the signature of the individual spoken of by the State's witnesses as *D. J. Sea;* and if it was intended for the same individual, then it is for the jury to say from the evidence what was his correct name, whether he could write his name, and whether he ever signed the bill of sale, as claimed by the defendant, or sold him the cow and yearling in controversy."

4. If you should find that some man did execute a bill of sale of the cow and yearling in controversy to defendant, and that defendant did pay him five dollars in gold for them, but that the execution of the bill of sale and the payment of the money was a sham and device to enable the defendant to appropriate the cow and yearling, and that defendant knew at the time of the payment and of the execution of the bill of sale that said animals were estrays and did not belong to the vendor, then, if he appropriated the said animals, or either of them, in such manner as constituted theft, you will find him guilty; "if, however, defendant killed said animals under the *bona fide* belief that he was the owner of them, you will find him not guilty."

The jury found a verdict of guilty, and fixed the punishment at two years in the penitentiary.

Motion for new trial was overruled, and defendant appealed.

*Seely & Gullette*, for appellant.

*A. J. Peeler, Assistant Attorney General*, for the State.

IRELAND, ASSOCIATE JUSTICE.—The defendant was in-

dicted in the District Court of Freestone county for the theft of a cow and yearling. The property alleged to have been stolen is described as estrays whose owner is unknown. The indictment contains two counts, one for the theft of the property, and one for killing the animals. There were exceptions to the indictment, based on the fact that it contained a count charging a felony and one charging a misdemeanor.

The State abandoned the latter count, and went to trial on the first. The defendant was convicted and sentenced to two years' confinement in the penitentiary. Among other matters the appellant assigns for error that " the verdict is contrary to the law and the evidence," and that the court erred in its charge to the jury, pointing out the charge complained of. Among other matters the appellant urges as a reason why the indictment is defective the fact that it does not charge that the animals alleged to have been stolen came within the meaning of estrays. Without deciding whether that allegation would have been necessary, had the State elected to try on the last count, we do not think it necessary when the party is charged with stealing an estray. It is sufficient, if the indictment is good, as in other cases of theft.

We do not believe that the proof in this case will sustain the conviction. The defendant may have been guilty of a violation of the estray laws, but the verdict for theft cannot be sustained. (Kay v. The State, 40 Tex. R., 29.)

The court below made the fact that there had been a man in the neighborhood at one time, called Jack Sea or D. J. Sea, and that he could write his name, and that the purported bill of sale of defendant being signed by A. J. Sea with his mark, too controlling an element in the case. While the fact was probably admissible in proof in that case, it was a circumstance of very little importance, and the admitted fact in proof by the

State in respect to the signature was not inconsistent with the truth of the facts proven by the defendant.

The court below erred in refusing a new trial, and the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.