### JOSEPH BENSON *v.* THE STATE.

1. MALICIOUS MISCHIEF.—Article 714 of the Penal Code (Pasc. Dig., Art. 2345) was enacted to prevent cruelty to certain animals, whether by the owner or another person.

2. INDICTMENT—OWNERSHIP.—It is not necessary to allege the ownership of

.   the animal, nor to negative the idea that it is the property of the accused. *The State* v. *Smith,* 21 Texas, 748, overruled; *The State* v. *Brocker,* 32 Texas, 611, approved.

3. INDICTMENT—DESCRIPTION OF ANIMAL.—It is sufficient to describe the animal as "a certain horse, a dumb animal under the statute." It is not necessary to allege the color of the animal; but, if alleged, it cannot be treated as surplusage, and must be proved as laid.

APPEAL from Burleson.   Tried below before the Hon. A. S. BROADDUS.

The opinion of the court clearly states the material facts.

*Booth & Alexander,* for the appellant.

*H. H. Boone,* Attorney General, for the State.

ECTOR, Presiding Judge.   This case is an indictment for malicious mischief, under Article 2345, Paschal's Digest. The charging part of the indictment is as follows :

" That Joseph Benson, late of the county of Burleson, laborer, on the 28th day of November, in the year of our Lord one thousand eight hundred and seventy-four, with force and arms, in the said county of Burleson and state of Texas, did then and there, unlawfully, willfully, and wantonly shoot and wound a certain horse, a dumb animal under the statute, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state." The defendant excepted to the indictment, which exceptions being overruled, he pleaded not guilty, was tried, found guilty, and a fine of $10 assessed against him. He filed a motion for new trial and in arrest of judgment, which being overruled, judgment was rendered, and he appealed. The charge of the court was as favorable to the defendant as the law would authorize. There was sufficient evidence to support the finding of the jury. The two points that must decide this case are raised in the exceptions of the defendant to the indictment, and in

the motion in arrest of judgment: 1st. That the animal alleged to have been wounded is not described in the indictment with sufficient certainty. 2d. That the indictment fails to charge that said animal was the property of another, and fails to negative that it was the property of defendant.

The object of adopting our Criminal Code is well known to the courts and to the older members of the legal profession. It was intended to improve and reform the criminal law. Similar improvements had been made in other states and in England, and there is now less strictness in forms generally, and less adherence to technical niceties, than formerly. These changes, whilst they have greatly facilitated the administration of justice, have not interfered with the rights and liberties guaranteed to the people. The 1st Article of the Code is as follows: " The design of enacting this Code is to define in plain language every offense against the laws of this state, and to affix to each its proper punishment."

" Article 3. In order that the system of penal laws in force in this state may be complete within itself, and that no system of foreign laws, written or unwritten, may be appealed to, it is declared that no person shall be punished for any act or omission, as a penal offense, unless the same is expressly defined and the penalty affixed by the written law of the state."

" Article 9. This Code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinctions usually made between the construction of penal laws and laws upon other subjects; and no person shall be punished for an offense which is not made penal by the plain import of the words of a law."

One of the requisites of an indictment (under our Code of Criminal Procedure) is that " the offense must be set forth in plain and intelligible words," and also that the law

defining it " shall be construed according to the plain import
of the language in which it is written." Keeping these
requisitions in our minds, we will be the better able to come
to correct conclusions in deciding the two main points raised
in this case ; and it is necessary that we should fully under-
stand the terms of the statute under which the defendant is
indicted.

This indictment is drawn under Article 2345, Paschal's
Digest. Article 2344 (Pasc. Dig.) reads as follows : " If any
person shall willfully kill, maim, wound, poison, or disfigure
any horse, mare, gelding, jack, jennet, mule, colt, cattle,
sheep, goat, swine, or dog of another, with the intent to
injure the owner thereof, he shall be fined not less than
three times the amount of the injury done to the owner by
such offense, and not exceeding ten times the amount of
such injury."

Article 2345 is as follows : " If any person shall willfully
and wantonly kill, maim, wound, poison, or cruelly and
unmercifully beat and abuse any dumb animal, such as is
enumerated in the preceding Article, he shall be fined not
exceeding $250." We believe that the animal which was
the subject of the malicious mischief is sufficiently described
in the indictment, so that the defendant is fully informed of
the charge against him, and could plead the judgment in bar
of any future prosecution for the same offense. It is now
not considered good pleading to give the color of the horse
in cases of theft and the like. If alleged, it will not be held
as surplusage, but must be proved as alleged. In the case
of *McGee* v. *The State*, decided November 5, 1875 (43
Texas, 662), our supreme court hold that it is sufficient, in a
case of theft, to describe the property alleged to be stolen
as an " estray." In an indictment for unlawful gaming, it
is a sufficient description of the place where the playing was
done to charge that the defendant did play at a game with

cards at a certain "store-house," without further describing the house.

On the next point, is it necessary to charge in the indictment that the animal alleged to be wounded is the property of another, stating his name, or to negative the idea that it is the property of Joseph Benson? The attorney for the appellant insists that it is, and that Article 2345 was never intended to punish a party for cruelty to his own animal; and, in support of this position, he cites us in his brief to the opinion of the learned judge in the case of *The State* v. *Joshua Smith*, 21 Texas, 748, in which case the court give their construction to Articles 2344 and 2345. The attorney general, on the part of the state, insists that Article 2345 was intended to prevent wanton cruelty to certain animals therein designated, whether inflicted by the owner or another, and, in support of his position, he cites us to the able opinion delivered by the court in the case of *The State* v. *Joseph Brocker*, 32 Texas, 612. After mature consideration of these two opinions, and an examination of the authorities, we have concluded that Article 2345 was intended to prevent cruelty to certain animals, whether by the owner or by any one else. The offense in Article 2345 is defined in plain language, and, giving the words used their common signification, they need, in our judgment, no other system of laws, either written or unwritten, to interpret their meaning, or to arrive at the intention of the legislators who passed the law; and we think that this and the other sections of the act, under the same head, can be reconciled.

The indictment follows the words of the law in defining the offense. A good pleader, as a general rule, will do this. We admit that at common law a party could not be guilty of malicious mischief for cruelty to his own aminal. At the same time the authorities cited are somewhat conflicting on

this point. It is also true that, in the forms of indictments. laid down by Wharton and Bishop, the owner of the animal is charged in the indictment; but, so far as we have been able to find, these forms are drawn under English and American statutes which rendered this necessary.

In some of the states of the Union statutes have been. enacted making it a penal offense (malicious mischief) to· kill, wound, or cruelly abuse certain animals, when done by the owner or another. In Article 2344 (Pasc. Dig.) it was· intended to protect certain animals against *willful* injury, inflicted upon them with intent to injure the owner, and the· punishment inflicted is graduated by the amount of injury done to the owner. In Article 2345 it was intended to protect the dumb animal from willful and *wanton* injury and cruelty of all persons, and the punishment bears no proportion to the amount of injury done to its owner.

In the case of *Branch* v. *The State*, 41 Texas, 624, the court use the following language : "The statute protecting· animals from willful and wanton acts of cruelty must be· construed with reference to that peculiar offense. Art. 2345. Under this Article the killing and other acts enumerated must be not only willfully, but also wantonly, done, and must be directed towards the animal itself, as distinguished from a willful killing, etc., with intent to injure the owner, as in the preceding Article (2344), a. depraved mind and a cruel disposition being common to· both. The act must be done intentionally and by design, and without excuse, and under circumstances evincing a lawless and destructive spirit." The killing or wounding· of a dumb animal may be willful without being wanton, according to the intention. It may be done under such circumstances as negative a wanton act—as where a man has. a good fence, and a horse or cow is in the habit of trespassing· upon his crop, and he kills it during an act of trespass upon his crop, not from wantonness, but to prevent the destruc—

tion of his crop, he would not be liable criminally. Bishop on Stat. Crimes, 437 ; *Branch* v. *The State*, 41 Texas, 625. No man would be excusable, under the law, for killing or wounding a horse for trespassing upon his crop if his crop was inclosed by an inferior fence.

It is admitted that the case turns upon the construction to be given to Article 2345, and, as before stated, we cannot concur in the correctness of the reasoning in construing the law given by the attorney for the appellant. Such a construction would render the two sections similar in substance and effect—two penal laws in force, if it were possible—with different punishments.

The judgment of the court below is affirmed.
*Affirmed.*