## S. C. WOODWARD V. THE STATE.

### *No. 535.   Decided October 27.*

1. **Malicious Mischief—Information—Allegation of Ownership.**—Indictments for malicious mischief (except in cases of wanton cruelty to animals, under provisions of article 680, Penal Code), to be sufficient, must allege the ownership or possession of the property injured to be in some person other than the accused; and averments charging the offense must be certain and positive, and not by way of argument or inference.

2. **Same—Malice—Intent.**—In prosecutions for malicious mischief malice is the gravamen of the offense, without which it would be a mere trespass. The intent is also a material, essential element; and if it be shown that the defendant acted in good faith and under a claim of right, the charge can not be sustained.

3. **Same—Evidence.**—In prosecutions for malicious mischief, any evidence tending to rebut the charge of malice, or going to show the animus of defendant, is admissible.

APPEAL from the County Court of Runnels. Tried below before Hon. C. H. WILLINGHAM, County Judge.

This appeal is from a conviction for malicious mischief, the punishment being assessed at a fine of $5.

The case is sufficiently stated in the opinion.

No briefs have come to the hands of the Reporter.

SIMKINS, JUDGE.—Appellant was convicted of the offense of willfully and mischievously breaking a lock, worth sixty cents, on the door of a building, and fined in the sum of $5, from which he appeals.

1. Appellant complains the court erred in not sustaining his motion to quash the information, because it does not allege who was in possession of said church of South Ballinger, or negative the idea that the same was in the lawful possession of said defendant. The information charges that defendant did willfully and mischievously break into a certain door, and injure and destroy a lock on said door on a certain house there situate, known as the "Church of Christ of South Ballinger," said lock being of the value of sixty cents, etc. While in some cases of malicious mischief ownership of the property is immaterial, as in case of wanton cruelty to animals (Penal Code, article 680; Turman v. The State, 4 Texas Criminal Appeals, 586), yet in other cases of malicious mischief the indictment should allege the ownership or possession of the property injured to be in some person other than the defendant. The State v. Smith, 21 Texas, 751. The averments charging the offense must be certain and positive, and not by way of argument or inference. Willson's Crim. Stats., sec. 1999. The motion to quash should have been sustained.

2. Appellant complains the verdict is contrary to the evidence. Joe Harding and wife conveyed a lot of land in South Ballinger to the prosecuting witness, Cartright, and two others, for the use and benefit of the Church of Christ worshiping at South Ballinger. Upon this lot a building was erected by voluntary contributions of Harding, the trustees, and others, and in time a congregation of fifty members or more was formed. The members became divided on the question of "Sunday School," Cartright leading the opposition, which was in a decided minority, but was composed largely of the original members of the church. Cartright, whom the record discloses as the instigator of all the mischief, finally consented to have "a Bible class;" but after this had continued sometime he locked up the church. This witness testifies, that he is not an elder, deacon, or officer in the church, but had acted as elder, and was one of the trustees; that he had authority, from the faction he belonged to, to lock the church; that he was not a minister, but simply a member of the congregation. In speaking of the reason for locking the church, he said: "I gave my consent for a Bible class in the church, but, instead, they had three or four classes in the Bible—the young in one class, the older in other classes. They taught only the Bible, but I considered it a violation of my agreement to have 'a Bible class.' I went over to church on Sunday, and conducted the services by reading the scriptures and breaking bread. There were forty or fifty present. After services, I got up, representing the church, and withdrew from six members, to wit, the Rev. George Newman and wife, C. S. Woodward and wife, and two

others, on account of their ungodly walk. They protested, and demanded charges be preferred. I then notified all present that I was going to lock up the church. The Rev. Newman rose, and put it to vote of the congregation whether they wished the church locked up, and they all voted against it." In spite of this vote, the witness, as he testifies, bought a new sixty-cent lock, and placed it on the door. He then locked himself with two others in the church that same night, knowing that service would be held next morning, and the church would probably be visited to see if all was in readiness. The appellant drove to the church that night. He was one of the elders elected by the majority. Finding the door locked, he broke it in and opened the door, receiving a blow from a club in the head, presumably from the witness. It was dark. Appellant was indicted for malicious mischief in breaking the lock.

It appears from the record that in the previous fall the congregation, or a large majority, had formally organized according to the discipline, methods, and usages of the church, and, after full notice to all the members, had elected these officers, one of whom was the appellant. The six members "withdrawn from" by the witness Cartright participated in the organization. It does not appear by what authority or usage Cartright could withdraw the church from six members. It is not shown that their church standing or connection was in the slightest degree affected by being "withdrawn from." On the contrary, the said Cartright became the seceder from the congregation. Indeed it is difficult to imagine a more high-handed and inexcusable act of interference with the rights of the congregation than is here shown. A member of a congregation, a self-constituted elder, but not an officer in fact, without consultation with the congregation, and in defiance of its wish, not claiming the building was illegally used, but only that the congregation or six members were violating his permission to have a Bible class, determined to oust the whole congregation by locking up the building. The truth is, the Church of Christ in South Ballinger, like many other churches, seems to be afflicted with a member whose zeal far outstrips his religion, and renders him "a thorn in the flesh," not only to the church but to the community; and it is always the mission of such a man to stir up strife and exemplify in his life the doctrine of intolerance and spite, while professing a discipleship of the Holy Nazarene, who was the personification of love, and whose mission was "peace and good will to men." We conclude that the evidence fails to show that appellant had no legal right to open the door by force.

But concede that appellant had no legal right to open the door, does the evidence make out a case of malicious mischief? Malice is said to be the gravamen of the offense, without which it would be a mere trespass. 2 Whart. Crim. Law, 1070; 2 Bish. Crim. Law, sec. 996;

Desty Crim. Law, 144c. The intent with which the act is done is material; and if it be shown that defendant acted in good faith, or under a claim of right, the charge of malicious mischief can not be sustained, and any evidence tending to rebut the charge of malice or going to show the animus of defendant is admissible. Am. and Eng. Encyc. of Law, title "Malicious Mischief."

The evidence tends to show that appellant was acting under a reasonable claim of right, and presents a case which should never have found its way upon the criminal docket, but should have been litigated before the civil courts.

The judgment is reversed and cause dismissed.

*Reversed and dismissed.*

DAVIDSON, Judge, absent.