## HAMPTON et al. v. LA SALLE HAT CO., Inc., et al.

United States District Court
S. D. New York.

Nov. 21, 1949.

Nathaniel A. Rankow, New York City, for plaintiffs.

Arthur J. Brothers, New York City, for defendant.

HULBERT, District Judge.

Defendants move for summary judgement dismissing the complaint upon the ground that there exists no genuine issue of fact in the case. Upon the original argument, the court was of the opinion that issues of fact existed and the motion was therefore denied. Defendant then moved for leave to reargue, which was granted. The court has reviewed the entire case and now makes the following disposition of the motion which is predicated upon the testimony of the plaintiffs taken in a deposition before trial, as well as the complaint.

Plaintiffs sue to recover damages for a claimed breach of either an express or im-

plied contract, and demand judgment for a total of $1,500,000 on three alleged causes of action.

Although each of the named defendants is alleged to be a Pennsylvania corporation, there is, in fact, only one defendant, LaSalle Hat Co., Inc., having changed its name to Champ Hats, Inc.

The facts established in the deposition of plaintiffs may be briefly summarized as follows: On September 25, 1946, plaintiff Hampton wrote to the defendant seeking an appointment for the purpose of presenting a prospectus of a "self-liquidating promotion program" to increase the sales of defendant's products in the Negro market. This letter was acknowledged by Mr. Appleby, sales and advertising manager of defendant, which resulted in a visit by Hampton to the office of defendant in Philadelphia early in October, 1946.

At that meeting, Hampton outlined to Appleby the idea that plaintiffs had for increasing defendant's sales. The program consisted of two main parts: (1) a sports promotion consisting of two basketball championship games in Philadelphia on the following Christmas and New Year's Days at which prizes would be awarded to the players and coaches, and in return therefor announcements would be made concerning defendant's products, and (2) an advertising and publicity campaign involving the use of endorsements of defendant's products by leading Negro personalities. It is undisputed that defendant did not utilize the first part of the program and that is not involved in this action.

At the conclusion of the aforesaid conference, Hampton testified that Appleby said to him: "Well, that sounds like it might be all right, but, of course, I am only the advertising director here. I would like to have something in writing which I can show to my board so that they will get an idea of what this sort of thing would cost." (p. 13)

This was agreed upon, and Hampton thereafter wrote a letter to Appleby dated October 5, 1946, a copy of which is attached to the original motion papers. The letter outlines the proposed program.

There was one other meeting between Hampton and Appleby in New York subsequent to October 18, 1946. The program was again discussed but the parties never concluded an agreement. As Hampton testified, Appleby told him:

"* * * that, as he has stated in his letter, he thought he could cooperate with us on an over-all advertising campaign, and that if his firm decided to use any part of the idea in its entirety that he would definitely see to it that we were compensated. We never did come to any actual figure." (p. 38)

"The most important thing said was that the firm still looked with some favor on entering the Negro market and if they entered it they would probably use our idea." (p. 40)

There were no other contacts that plaintiffs had with defendant, and Hampton testified that he had dealings with no one on behalf of defendant except Mr. Appleby.

From the above it is apparent that summary judgment must be granted in favor of defendant on the second cause of action which alleges a breach of an express contract. It is established to the satisfaction of the court that no contract was ever concluded between plaintiffs and defendants. Even if the circumstances be construed as making an agreement, it would fall far short of being an enforceable contract because none of the essential terms of the contract were ever agreed upon.

Turning now to the first and third causes of action, damages are sought because of the same circumstances, but upon the theory of an implied contract. In order for plaintiffs to succeed in this action they must establish that there was something new and novel about their advertising program which defendants wrongfully appropriated. The complaint does not allege in what way plaintiffs' idea was new or novel, but upon the argument of the motion plaintiffs' attorney asserted the novelty lay in plaintiffs' suggestion that Jackie Robinson, now a prominent baseball player, be utilized for the sponsored advertising portion of the program. It is to be noted that Jackie Robinson was not mentioned in the letter of October

5, and it appears from the testimony that plaintiffs at that time had no contractual arrangement with him.

Plaintiffs complain that defendant advertised its products on November 29, December 5, and December 12, 1947 in the Afro-American and Pittsburg Courier newspapers, and in the April 1948 issue of Ebony Magazine, using endorsements by Jackie Robinson. These were all more than a year after plaintiffs' last contact with defendants.

Although the novelty of the idea was asserted as the suggested use of Jackie Robinson endorsements, plaintiffs did not so limit their claim when examined before trial. As Hampton testified:

"Q. * * * Your claim narrows itself down to advertising in colored papers and magazines? A. Yes, and magazines.

"Q. And magazines with a Jackie Robinson endorsement; isn't that right? A. Not specifically with Jackie Robinson as the individual, but specifically with the use of a Negro athlete's endorsement." (p. 81)

Plaintiff also claimed that if any other prominent Negro athlete had been used for advertising, they would have claimed a right to compensation. Among the others named by plaintiff was Joe Louis, then the heavyweight boxing champion of the world. Plaintiff, however, also testified that "Joe Louis had been overworked *in this particular type of publicity,* and that Joe Louis was not the precise person to use because he had been utilized too many times by too many other people * * * ." (Italics for emphasis.) (p. 95) It was also conceded by counsel for plaintiffs that it is usual for prominent athletes to be approached to give endorsements for commercial products. (p. 50) Thus it is evident just from the testimony of plaintiffs, without reference to the many exhibits submitted by defendant, that the idea of sponsored advertising using prominent Negro athletes was not new or novel at the time it was communicated by plaintiffs to defendants. Indeed, the fact is so well known that the court can take judicial notice of it.

■■ The law is clear that plaintiff cannot recover upon a contractual theory in this case unless his idea was new and novel at the time it was communicated to defendant. Soule v. Bon Ami Co., 201 App.Div. 794, 195 N.Y.S. 574, affirmed 235 N.Y. 609, 139 N.E. 754; Lueddecke v. Chevrolet Motor Co., 8 Cir., 70 F.2d 345. It is also the law that assuming plaintiffs could have protected the idea by contract, since they failed to do so, and since they voluntarily communicated the idea to defendant, whatever interest they had in it became common property. Lueddecke v. Chevrolet Motor Co., supra; Bowen v. Yankee Network, Inc., D.C., 46 F.Supp. 62. The allegation in the complaint that the plaintiffs submitted the advertising campaign to defendants on the understanding that if the defendant should use any part of it, defendant would pay the reasonable value thereof is negatived by the testimony of Hampton. As he admitted, he submitted the plan in writing to Appleby so that he could show it to the "board".

Applying these principles to the facts as established from the testimony of plaintiffs, summary judgment must be granted in favor of defendant.

Motion granted. Settle order on notice.