In the Matter of the Determination of the Relative Rights in and to the Waters of Franktown Creek and Its Tributaries in Washoe County, State of Nevada.

FRANKTOWN CREEK IRRIGATION COMPANY, INC., Appellant, *v.* MARLETTE LAKE COMPANY, a Nevada Corporation, and STATE ENGINEER OF THE STATE OF NEVADA, Respondents.

No. 4386

September 27, 1961                                    364 P.2d 1069

*M. A. Diskin and John S. Halley,* of Reno, for Appellant.

*Roger D. Foley,* Attorney General, and *L. William Paul,* Deputy Attorney General, of Carson City; *Vargas, Dillon & Bartlett,* of Reno, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

Throughout this opinion Marlette Lake Company will be referred to as Marlette, and Franktown Creek Irrigation Company, Inc., as Franktown.

Marlette owns a water distribution system by which water is supplied for domestic, industrial, commercial and municipal purposes to the general area comprising Virginia City, Gold Hill, Silver City and Carson City.

Franktown is a private corporation through which its shareholders manage their interests in the waters of Franktown Creek.

Pursuant to NRS 533.090 Franktown, by petition, requested the state engineer to determine the relative rights of various claimants to the waters of Franktown Creek and its tributaries, including Hobart Creek. Following investigation, the state engineer entered his order granting the petition, and arranged to proceed with his determination. The final order of determination was subsequently made, and thereafter filed with the county clerk of Washoe County. Verified exceptions thereto were filed by Franktown and Marlette. NRS 533.170. A pre-trial conference was held, during which various exhibits were received and certain admissions of fact made. Depositions were secured and affidavits obtained which, with the pleadings, exhibits, and admissions, formed the supporting documents for the motion for summary judgment thereafter filed by Marlette. Summary judgment was granted. Franktown appeals from that judgment.

For the purposes relevant to this appeal, the summary judgment entered by the lower court approved the final order of determination made by the state engineer. The judgment thus entered permits Marlette to appropriate 10 c.f.s. of water from Hobart Creek, a tributary to Franktown Creek, *above* the Red House diversion, for municipal, commercial, industrial and domestic purposes. The period of use is designated as January 1 to December 31, in the general area comprising the cities of Carson City, Virginia City, Silver City and Gold Hill. The judgment granted Franktown permission to appropriate 37.09 c.f.s. of water from Franktown Creek *below* the Red House diversion, for irrigation, stockwatering and domestic purposes for use on a full-year basis. The allocation to Franktown is not disputed. However, Franktown asserts that the allocation to Marlette is excessive. To understand Franktown's position in this regard, the following factual information is necessary.

In 1878, by agreement and deed, the predecessors of Franktown sold and conveyed to the predecessors of Marlette all waters naturally flowing in Hobart Creek at and above the Red House diversion. From that date to the present, Marlette and its predecessors have completely controlled the means which allow water arising above the Red House diversion to flow down Franktown Creek to the lower users. At Red House the water is diverted into two flumes which, in turn, convey the water to storage tanks, and from the tanks the water is transmitted by pressure pipe lines to the Virginia City area. All waters not so diverted at Red House are allowed to spill into Franktown Creek channel, where they flow down the creek and are used by the shareholders of Franktown.

The watershed of Franktown Creek, Hobart Creek and tributaries, is located on the eastern slopes of the Carson Range. To the north, and on the western slopes of the Carson Range in the Mt. Rose area, is a separate and distinct watershed. Waters from the last-mentioned watershed would flow naturally into Lake Tahoe, unless artificially diverted. In 1946 a predecessor of Marlette sold 5.5 c.f.s. of water to a Mr. Heidenreich who later sold to Franktown. These waters were collected from North Creek in the Mt. Rose watershed and artificially diverted to a point above Red House where they commingled with the waters of Hobart Creek. These commingled waters were then diverted at Red House in the manner above indicated. The waters collected from the Mt. Rose watershed were of such amounts as permitted diversion at Red House to the flumes without adversely affecting the ability of the diversion works to carry the waters from the Franktown and Hobart Creek watershed, except to the extent of surplus waters due to seasonal variations. The carrying capacity of the flumes below Red House is admitted to be at least 10 c.f.s.

From about 1936 until about 1943, Marlette's predecessor diverted at Red House from 1.5 c.f.s. to 4.5 c.f.s. of water into the flumes. During that period of time, all waters not so diverted flowed into Franktown Creek

and were applied to beneficial use by Franktown. Before, during said period, and since, Marlette and its predecessors maintained full control of the diversion works at Red House. Franktown never demanded water from Marlette's predecessor during this period, or at any time. It simply made use of the water that was not diverted and used by Marlette's predecessor.

In support of its claim that the district court erred in granting summary judgment, Franktown contends:

First: That before 1949 (Stats. Nev. 1949, ch. 83, p. 102; NRS 533.060 (3)) it had acquired by prescription, i.e., by adverse use for the period of five years, the right to use all of the waters of Franktown Creek and its tributaries except the 1.5 c.f.s. to 4.5 c.f.s. mentioned above; that, in any event, an issue of material fact in this regard was raised, thus precluding summary judgment.

Second: That Marlette or its predecessor, abandoned its right to use the waters of Franktown Creek and its tributaries, including Hobart Creek, except the 1.5 c.f.s. to 4.5 c.f.s. mentioned above, and that such abandonment is available to Franktown as a defense to this adjudication; that, in any event, an issue of material fact in this regard was raised, thus precluding summary judgment.

Third: That Marlette's right to use the waters of Franktown Creek and its tributaries, including Hobart Creek, should be reduced by the 5.5 c.f.s. of water sold in 1946 by Marlette's predecessor to Heidenreich who, in turn, sold to Franktown; that, in any event, an issue of material fact in this regard was raised, thus precluding summary judgment.

These contentions were presented to the lower court. In deciding whether that court was correct in granting summary judgment, we accept as true all evidence favorable to Franktown. Parman v. Petricciani, 70 Nev. 427, 272 P.2d 492; Smith v. Hamilton, 70 Nev. 212, 265 P.2d 214.

1. Prescription: To establish a right by prescription in Franktown before 1949 to the use of water claimed by the predecessor of Marlette, the use and enjoyment must have been uninterrupted, adverse, under a claim of right, and with the knowledge of such predecessor. Authors v. Bryant, 22 Nev. 242, 247, 38 P. 439, 440; Application of Filippini, 66 Nev. 17, 23, 202 P.2d 535, 538. Such use must have been for a period of at least five years. Vansickle v. Haines, 7 Nev. 249, 286; NRS 11.150. Though it is clear that Franktown did use all waters flowing in Franktown Creek and its tributaries (except the 1.5 c.f.s. to 4.5 c.f.s. of water diverted by Marlette's predecessor) for the statutory period, the record on appeal does not tend to establish that such use was adverse and under a claim of right. The opposite appears to be true. Such use was permissive, not adverse or hostile. It is admitted that Marlette and its predecessors have always maintained absolute control of the diversion works at Red House. Waters not diverted at that point were permitted to flow in Franktown Creek and were applied to beneficial use by the lower ranchers. The cases relied upon by Franktown to support its position on this issue are not in point. In Smith v. Logan, 18 Nev. 149, 1 P. 678, the trial court had found all elements of adverse user to be present. Because of that finding the Supreme Court affirmed the trial court in decreeing a prescriptive right in the lower user. The trial court made a similar finding in the cases of Gardner v. Wright, 49 Ore. 609, 91 P. 286, and Pflueger v. Hopple, 66 Ida. 152, 156 P.2d 316. In the instant case, the elements of adverse use under a claim of right are not present.

The exceptions of Franktown to the state engineer's final order of determination constitute the pleadings, as between those parties. NRS 533.170 (2). Those exceptions were verified by Lathrop, secretary of Franktown, and contain the conclusion that its use of the waters during the period mentioned was "open, notorious, hostile and adverse." Franktown insists that such averment

contained in pleading, verified by an officer of the company, of itself creates an issue of material fact and thus precludes a summary judgment. We need not decide this question, because in this case Lathrop subsequently gave a fact deposition, covering the same subject matter, which deposition is a part of the record on appeal. That deposition does not support the averment of the verified pleading mentioned above. Under such circumstances, we hold that, in deciding whether an issue of fact is raised, the lower court must rely upon the fact deposition of such person and disregard the conclusions of his verified pleading. Bennett v. Flanigon, 7 Cir., 220 F.2d 799, 803.

In our view, the lower court properly decided for Marlette on this issue.

2. Abandonment: It is admitted that, as of September 11, 1878 (the date of the agreement and deed between the predecessors of Franktown and the predecessors of Marlette), Marlette's predecessor had a vested right to use all of the waters of Franktown Creek and its tributaries, including Hobart Creek, flowing at and above the Red House diversion. Franktown contends that such right was abandoned by Marlette's predecessor by reason of the non-use of all but 1.5 c.f.s. to 4.5 c.f.s. of water during the period from 1936 to 1943. The water right having vested in Marlette's predecessor before 1913, it is necessary to establish the owner's intention to abandon and relinquish such right before an abandonment can be found. Stats. Nev. 1913, ch. 140, sec. 8; amended Stats. Nev. 1917, ch. 190, p. 353; 1943 NCL sec. 7897; NRS 533.060(2). In re Waters of Manse Springs, 60 Nev. 280, 287, 108 P.2d 311, 315. Franktown submits that non-use for the period mentioned is some evidence of an intent to abandon the water right, and of sufficient substance to withstand a motion for summary judgment. We agree that non-use for such a period of time may inferentially be some evidence of an intent to abandon. In re Waters of

Manse Springs, supra, 290; Valcalda v. Silver Peak Mines, 9 Cir., 86 F. 90, 95. However, in this case we need not decide whether such evidence of itself defeats summary judgment on this issue.

We have heretofore determined that the lower court was correct in deciding that Franktown had not acquired a prescriptive right to use such waters. It is admitted that Franktown has never sought to appropriate such waters by first making application to the state engineer in the manner required by statute. If abandonment had in fact occurred, as Franktown contends, such waters reverted to the state without any title to its use outstanding against the state. In re Waters of Manse Springs, supra, pp. 286, 287. Had Franktown desired to apply for such waters, it was required by statute to follow the statutory procedure. No other avenue was open by which Franktown could acquire a right to use the waters here being considered. Accordingly, it is clear that its claim of abandonment set forth in the exceptions to the final order of determination can amount only to a claim that Marlette was awarded water that belonged to the state; it is not, and cannot be, a claim that Franktown is entitled to such waters.

NRS 533.145, designating who may object to a preliminary order of determination, appears to require that the objector claim an interest in the stream system by reason of a claimed vested right or under permit from the state engineer. One or the other need be shown to establish his interest in the adjudication. NRS 533.170 permits exceptions to the final order of determination to be filed by a party in interest who is aggrieved or dissatisfied. Therefore, it is clear that the court below was correct in deciding that Franktown's claim of abandonment was not a valid exception to the state engineer's final order of determination. Franktown is not a party in interest as to that claim. Accordingly, no genuine issue as to a material fact exists as to this issue, and summary judgment was proper.

3. Subtraction Theory: In 1946 Marlette's predecessor sold 5.5 c.f.s. of water to a Mr. Heidenreich who, in turn, sold to Franktown. Because of that sale, Franktown insists that Marlette should not be permitted to divert more than 4.5 c.f.s. at Red House. It reaches this conclusion by stating that the capacity of Marlette's flumes at the Red House diversion has always been, and is, 10 c.f.s.; subtraction of the 1946 sale from the flume capacity leaves for Marlette's use the aforementioned 4.5 c.f.s. of water.

In our view, this contention is without merit. It is not disputed that the source of the water sold to Heidenreich is North Creek, sometimes called Third Creek, and tributaries thereto. That creek is located on the western slopes of the Carson Range, and is a part of the Mt. Rose watershed, having its natural drainage into Lake Tahoe. North Creek is not included in the present adjudication. The pre-trial order of the lower court states: "The state engineer defined the statutory adjudication as encompassing the watershed of Franktown Creek, including its tributary Hobart Creek and the minor tributaries of Franktown Creek on the eastern slope of the Sierra Nevada [Carson Range] in the same watershed. No other waters have at any time been comprehended in the adjudication proceeding; more particularly, Lake Tahoe, Washoe Lake, Ophir Creek, Marlette Lake, North Flume and waters in the Mt. Rose area, all distinct and separate watersheds, and not encompassed thereby." The sale in 1946 by Marlette's predecessor to Heidenreich of 5.5 c.f.s. of water had nothing to do with the waters of Franktown Creek and its tributaries, including Hobart Creek, embraced in the present adjudication.

Judgment affirmed.

BADT, C. J., and MCNAMEE, J., concur.