EVA D. ABBOTT, RICHARD E. ABBOTT, AND EL RANCH OTEL, INC., A.K.A. EL RANCH–OTEL, INC., A CORPORATION, APPELLANTS, *v.* E. W. MILLER AND NITA H. MILLER, RESPONDENTS.

No. 4680

March 30, 1964                                    390 P.2d 429

*Bradley & Drendel* and *Leo P. Bergin,* of Reno, for Appellants.

*Laxalt, Ross & Laxalt,* of Carson City, for Respondents.

# OPINION

By the Court, THOMPSON, J.:

We are asked to review a summary judgment in a declaratory relief action. NRCP 56(a). The judgment canceled an agreement between the Millers (plaintiffs) and the Abbotts and their assignee El Ranch Otel, Inc. (defendants), and removed the cloud cast upon the Millers' title to certain land by reason of the agreement. We reverse, for there exist genuine issues of material fact to be resolved.

The record shows that on March 9, 1959 the Millers and the Abbotts entered into a written "agreement for construction of a building and for lease." In short, the agreement obligated the Millers to construct a building suitable for the operation of a bar, restaurant and casino on a corner parcel of land adjoining the El Ranch Otel, a motel which the Abbotts were purchasing. The cost of the building was to be not less than $40,000 nor more than $50,000. The plans and specifications therefor were to be jointly approved. Upon completion of construction the Abbotts had a 5-year lease, and were to pay monthly rent in a sum equal to 1% of the Millers' total investment in the land and improvements. (The Millers had bought the land for $20,000—this cost plus the building cost would require a monthly rental of between $600 and $700.) During the interim period, viz., from April 1, 1959 to building completion, the Abbotts were to pay rent of $100 per month. The agreement and lease could be assigned by the Abbotts, without Millers' consent, to a corporation to be formed and controlled by them, and it was assigned to El Ranch Otel, Inc. Additionally, the agreement specifically referred to a contract of sale dated February 17, 1959, between William H. Campbell and Eileen H. Campbell as sellers, and Richard E. Abbott and Eva D. Abbott as buyers (which contract related to the sale and purchase of the adjoining motel, the El Ranch Otel), and provided that, should the Abbotts default in their agreement with the Millers, Mr. and Mrs. Campbell could cure the default and take over the Abbotts' position.

The Miller-Abbott agreement did not require construction of the building within a specific period. It was to be done as soon as "practical" after the plans and specifications had been approved. So far as the record shows, plans and specifications were never prepared, nor was construction commenced. Shortly after the agreement was made, El Ranch Otel, Inc. (Abbotts' assignee) hired Savini Construction Company to remove certain buildings from the corner parcel in question so that the Millers could proceed with construction. About $6,000 of the bill submitted by Savini for its work was not paid by El Ranch Otel, Inc., the latter contesting its validity. In 1960 the Carson City Nugget, Inc. loaned El Ranch Otel, Inc. $4,000. As of March 1963 there remained owing and past due on that obligation $3,347.85. In October 1961 the Abbotts were divorced. The decree gave Mrs. Abbott all of Mr. Abbott's interest in the El Ranch Otel, Inc. In 1962 the Campbells (who had sold to the Abbotts the adjoining motel, El Ranch Otel, and had taken a note for the principal balance and a trust deed as security) declared the Abbotts in default and, as beneficiaries, purchased the property at a trustee's sale. In addition, the Campbells paid ad valorem taxes of $3,536 assessed against the motel property, which the Abbotts were obliged to pay but did not.

Because of the uncertain financial position of El Ranch Otel, Inc., the Millers chose not to proceed with the construction of the proposed bar, restaurant and casino. Instead they commenced this suit for declaratory relief, asking the court to announce that they were relieved from all contractual responsibility to the Abbotts or El Ranch Otel, Inc.

Their charge was threefold. First, the Millers assert that all parties to the agreement contemplated that Richard E. Abbott and his wife would control the corporation together. In seeking to sustain this position, they point to the paragraph of the agreement permitting the Abbotts to assign their interest therein (without the Millers' consent) only to a corporation to be formed and controlled by them (the Abbotts). Thus (the Millers

argue), later, when the court, in a divorce action, divested Mr. Abbott of his interest in the corporation and gave it to Mrs. Abbott, the covenant relating to assignment was breached. We find no merit in this contention. The provision against assignment does not preclude a transfer of the rights thereunder by operation of law. Trubowitch v. Riverbank Canning Co., 30 Cal.2d 335, 182 P.2d 182. The divorce court transfer of Mr. Abbott's interest in El Ranch Otel, Inc. to Mrs. Abbott was apparently no more than a settlement of community property rights. In such circumstances the covenant against assignment was not broken. Buck v. Cardwell, 161 Cal.App.2d 830, 327 P.2d 223. In any event, where a bilateral contract forbids assignment, it becomes a matter of interpretation as to what is meant. 2 Williston, Contracts, Rev. Ed. 1217. Here, the affidavits received on the motion for summary judgment are in direct conflict on the issue of corporate control, one side (the Millers) insisting that Mr. Abbott's presence was necessary, and the other (El Ranch Otel, Inc. and Mrs. Abbott) urging the opposite.

Next, the Millers contended that "the purpose of the said agreement was to enable the defendants (the Abbotts and El Ranch Otel, Inc.) to conduct a restaurant, bar and casino business, having the personal attention of the defendant Richard E. Abbott." The agreement simply does not contain a provision requiring Mr. Abbott's personal attention to the business, and the affidavits received on the summary judgment motion are in direct conflict on the point.

Finally, the Millers alleged that the contracting parties agreed to postpone construction of the building until El Ranch Otel, Inc. was financially able to furnish it. The expected cost of furnishing was estimated at $25,000 to $30,000. This charge was denied by the answer. The record is devoid of evidence by affidavit or otherwise, from either side, touching upon the alleged agreement to postpone construction. However, this disputed contention (that the parties agreed to postpone construction until El Ranch Otel, Inc. was financially able to furnish and equip the building) is coupled with

the assertion that El Ranch Otel, Inc. is insolvent in the sense that it was and is unable to pay its debts as they mature. The central question on this appeal is whether the showing made on the summary judgment motion on this phase of the case was sufficient to permit the trial court to conclude that the Millers were entitled to the relief requested as a matter of law.

The legal basis for the Millers' position is Restatement, Contracts § 287.[1] The Millers contend that the record conclusively demonstrates that the El Ranch Otel, Inc. is "insolvent" in the sense used by the Restatement. They direct our attention to the $6,000 disputed obligation owing Savini Construction Company; the $3,347.85 past due debt to the Carson City Nugget Inc.; and particularly to the glaring fact that the corporation defaulted on the purchase of the adjoining motel property and the former owners lawfully re-acquired it and, in addition, paid delinquent ad valorem taxes thereon. They stress the fact that the corporation, in opposition to their summary judgment motion, did not offer factual information to show that it could perform the contract in question, nor did it attempt to explain its financial defaults in the particulars mentioned. Their argument, though persuasive, cannot preclude a trial on the merits. Of course, it is plain from the evidence offered that El Ranch Otel, Inc. did not pay the mentioned obligations and, had there been a full trial, perhaps the court in such circumstances could reasonably infer that the corporation's failure to pay was due to its inability to do so, ergo, insolvency. However, on a motion for summary

[1] The section reads: "(1) In promises for an agreed exchange a promisor need not perform at the time fixed for performance of his promise if performance of the exchange is uncertain because the other party is insolvent, adjudicated a bankrupt, or his property taken under a receivership; or a petition in bankruptcy or for a receiver is pending against him, unless performance of the exchange is rendered, tendered, or made reasonably certain by security. If the promisor reasonably and materially changes his position, or a longer time than is permissible under the contract elapses, before performance of the exchange is rendered, tendered or secured, the duty of the promisor is discharged.

"(2) A person is insolvent within the meaning of the Restatement of this Subject when he is unable to pay his debts as they mature."

judgment, the trial court is precluded from drawing inferences favorable to the moving party. The opposite is true. Every favorable intendment must be accorded the party against whom the motion is made. Smith v. Hamilton, 70 Nev. 212, 265 P.2d 214; Parman v. Petricciani, 70 Nev. 427, 272 P.2d 492; Franktown v. Marlette, 77 Nev. 348, 364 P.2d 1069. With this guide before us, we must view the record only as showing that the specified debts were not paid, instead of showing insolvency.

There remains one further point for decision. One of the principal reasons advanced below and here to discharge the Miller-Abbott agreement is that its purpose has become frustrated. See Restatement, Contracts § 288; Corbin on Contracts, Vol. 6, § 1353 et seq.; cf. comment 46 Mich.L.Rev. 224, "Impracticability of Performance as an Excuse for Breach of Contract." The argument is simply this. When the agreement was made the parties expected that Mr. and Mrs. Abbott would, together, manage the motel, bar, restaurant and casino. (Mrs. Abbott was to operate the motel, and her husband the bar, restaurant and casino.) When the Abbotts were divorced and Mr. Abbott divested of his interest in the El Ranch Otel corporation, the expectations of the agreement were partially frustrated. Later when the corporation lost the motel for failure to make the payments promised, total frustration occurred. Though the record before us offers a foundation for such an argument, it is not sufficiently complete to permit any court to declare, as a matter of law, that the agreement is discharged on this ground. The part Mr. Abbott was to play is a disputed fact (as previously indicated in discussing the first and second contentions). Nor is it at all clear that the Miller-Abbott agreement was contingent upon the Abbotts performing their obligation to Mr. and Mrs. Campbell, from whom they were purchasing the motel, with the result that a default upon one contract would operate as a default upon the other. The agreement itself did not so provide; nor does the record before us contain the papers involved in the

Campbell-Abbott motel sale. Though there are circumstances reflected in the record from which a court could, perhaps, infer that the two transactions (Miller-Abbott and Campbell-Abbott) were intended to be interrelated and dependent upon one another, such an inference is not permissible on a summary judgment motion. As before indicated, on a motion for summary judgment, all favorable inferences are to be given the party against whom the motion is made. Accordingly, here we must infer that the Miller-Abbott bar, restaurant and casino agreement and the Campbell-Abbott motel agreement were, and are, separate transactions. Treating them separately, as we must at this stage of the case, there can be no legal justification for the summary judgment entered below.

Reversed and remanded for a trial on the merits.

BADT, C. J., and McNAMEE, J., concur.