MICHAEL C. CATRONE, Appellant, *v.* 105 CASINO CORPORATION, a Nevada Corporation, and ROBERT VAN SANTEN, Respondents.

No. 5003

May 13, 1966                                  414 P.2d 106

*Harry E. Claiborne,* of Las Vegas, for Appellant.

*Samuel S. Lionel* and *Don L. Griffith* and *Jones, Wiener & Jones,* of Las Vegas, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

This appeal is from a summary judgment for 105 Casino Corporation and Van Santen, the defendants in an action brought by Catrone for damages for false imprisonment and malicious prosecution. On the record presented we must agree with the district court that there is no genuine issue as to any material fact. Accordingly, we affirm.

The corporation owns the Nevada Club, a gaming establishment in Las Vegas. Van Santen is the principal stockholder and president. Catrone claims to have marked a seven dollar keno ticket at the club on which all eight numbers marked were drawn, thus entitling him to $25,000. When he presented his ticket for payment, the club officials examined the machine original

ticket and duplicate and concluded that Catrone's ticket was suspicious enough to warrant investigation. The Club, the Las Vegas Police Department, and the State Gaming Control Board investigated. The police and Control Board investigations resulted from complaints lodged with those agencies by Catrone. The Control Board required the corporation to deposit $25,000 in trust pending the outcome of its inquiry. When the investigations were completed, the $25,000 was released to the corporation. Detective Compton of the Las Vegas Police signed a criminal complaint charging Catrone and three employees of the Nevada Club (who were in charge of the keno game on which Catrone was supposed to have wagered) with the crime of attempting to obtain money under false pretenses. The defendants were arrested pursuant to warrant. A preliminary hearing followed, at which the magistrate ruled that Catrone and two others be held to answer in the district court. The district court trial resulted in a dismissal of the charges against Catrone. This civil action followed.

The false imprisonment claim for relief is without substance because Catrone does not claim that the warrant under which he was arrested was void. His imprisonment was under legal process. Therefore, this claim fails. Dixon v. City of Reno, 43 Nev. 413, 187 P. 308 (1920) ; Buckley v. Klein, 206 Cal.App.2d 742, 23 Cal. Rptr. 855 (1962) ; Prosser, Torts, 53 and 646 (2d ed. 1955). "If the imprisonment is under legal process but the action has been carried on maliciously and without probable cause, it is malicious prosecution. If it has been extrajudicial, without legal process, it is false imprisonment." 1 Harper & James, Torts 232 (1956). Thus, we direct our attention to the claim of malicious prosecution.

The elements of a claim for relief for malicious prosecution are want of probable cause, malice, termination of the litigation and damage. Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962) ; Bonamy v. Zenoff, 77 Nev. 250, 362 P.2d 445 (1961). Normally, the person

who signs the criminal complaint is a defendant in the later civil suit. This case is different as police officer Compton is not a defendant in this action. Catrone chose to sue only the 105 Casino Corporation and Van Santen on the theory that they maliciously induced Officer Compton to bring the criminal charges. We approve the rule that one who procures a third person to institute a malicious prosecution is liable in damages to the party injured to the same extent as if he had instituted the proceeding himself. Blancutt v. Burr, 100 Cal.App. 61, 279 P. 668 (1929); Collins v. Owens, 77 Cal.App.2d 713, 176 P.2d 372 (1947); Sandoval v. So. Calif. Enterprises, 98 Cal.App.2d 240, 219 P.2d 928 (1950); Restatement, Torts, par. 653, (g). We must, therefore, examine the record before us and ascertain if an issue of fact exists as to whether the defendants were the proximate cause of the criminal prosecution.

All relevant factual data contained in the papers supporting the motion for summary judgment and in those opposing that motion show that the criminal investigation was instigated by Catrone rather than by the defendants. Mindful that we must accept as true all evidence favorable to Catrone, the party against whom summary judgment was entered, [Franktown v. Marlette, 77 Nev. 348, 364 P.2d 1069 (1961); Parman v. Petricciani, 70 Nev. 427, 272 P.2d 492 (1954); Smith v. Hamilton, 70 Nev. 212, 265 P.2d 214 (1953)] we note the statement of fact in his affidavit that the investigations arose by "my formal complaint filed both with the Gaming Control Board and the City of Las Vegas Police Department." To this extent, at least, the law was concededly put in motion by Catrone. Notwithstanding this fact, Catrone insists that the record shows the existence of a genuine issue of fact as to whether the defendant Van Santen maliciously induced Detective Compton to file a criminal charge.

Detective Compton stated in his affidavit that "neither Van Santen nor any other person employed by or associated with the Nevada Club requested or suggested that

any of the defendants in the criminal action be prosecuted criminally." The detective said that he recommended criminal prosecution because of his belief that the defendants had "participated in an unlawful attempt to defraud the Nevada Club by means of a fraudulent keno ticket." His belief was based upon personal observation of the machine original and duplicate tickets No. 3536, disclosing an unusual number of smudges and malalignment; the opinion of two questioned document experts that the keno tickets were not genuine; the refusal of Nevada Club employees in charge of the keno game to take a polygraph examination; a statement by a third party claiming that one of the Club's keno writers had a scheme by which to work a fraud on the Club and explaining that scheme; a report that a camera used to photograph the 20 balls in the "rabbit ear" tubes following each game had been tampered with and did not photograph the game in question; and other data. Detective Compton was the complaining witness who signed the criminal complaint, and testified fully at the preliminary hearing along with ten other prosecution witnesses. The complete record of the preliminary hearing, the affidavits of Compton and Van Santen, the criminal complaint and warrant for arrest were the documents offered in support of the motion for summary judgment. All of those papers negate the allegation that the defendants in this civil action induced or procured Detective Compton to criminally prosecute Catrone.

Catrone offered his affidavit and that of Pearson in opposition to the motion. These opposing affidavits do not meet the requirements of NRCP 56(e). That rule demands that opposing affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The affidavit of Pearson does not touch upon the issue we are here considering,—i.e., whether the defendants induced or procured Detective Compton to criminally prosecute Catrone. The affidavit of Catrone

does deal with this issue but in an impermissible manner. He stated that Detective Compton was extremely friendly to Van Santen and investigated the incident for the purpose of exonerating the Club from liability. This is a conclusion without factual support in the record. The affiant's statement would not be admissible evidence at trial and is equally ineffective for the purpose of defeating a motion for summary judgment. Bond v. Stardust, Inc., 82 Nev. 47, 410 P.2d 472 (1966) ; Dredge Corp. v. Husite Co., 78 Nev. 69, 369 P.2d 676 (1962).

Further, Catrone charges in his affidavit that Van Santen induced a third person to make a false statement to the police incriminating Pearson in a scheme to defraud the club; that Van Santen paid $250 for the false testimony of Wagner; and that the automatic camera, which photographed the 20 balls in the "rabbit ear" tubes after each game, had not been in operation for several months before the incident in question, and Van Santen knew this. Catrone is not shown to be competent to testify to those matters. The third person who is alleged to have been induced by Van Santen to make a false statement would be a competent witness to so testify, but his affidavit was not secured. Wagner would be a competent witness to testify that Van Santen paid him $250 for false testimony, but his affidavit was not secured. One with knowledge of the failure of the automatic camera sometime prior to the incident in question could testify to that fact, but his affidavit was not secured. In short, the allegations made by Catrone in his affidavit could not be the subject of his testimony at trial unless a foundation as to competency could first be established. This foundation is lacking in the record. We must therefore conclude that the Catrone affidavit is ineffectual for the purpose of creating a genuine fact issue as to whether the defendants induced or procured Detective Compton to criminally prosecute. Absent competent fact evidence establishing that Detective Compton commenced the criminal prosecution because

of direction, request, or pressure from 105 Casino Corporation or Van Santen, it was permissible for the district court to rule as it did.

Affirmed.

ZENOFF, D. J., concurs.

Counsel stipulated to submit this proceeding to a two-judge court.