OTIS TURNER AND JUNE TURNER, HIS WIFE, APPELLANTS, *v.* L. V. REDFIELD, RESPONDENT.

No. 5022

July 11, 1966                                416 P.2d 233

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* and *Casey W. Vlautin,* of Reno, for Appellants.

*Clel Georgetta,* of Reno, for Respondent.

## O P I N I O N

By the Court, THOMPSON, J.:

We are asked to set aside a summary judgment in favor of L. V. Redfield, defendant to a counterclaim for money alleged to be due on a stock transaction with Otis Turner and June Turner, the counterclaimants. The Turners contend that if all facts in their favor are accepted as true, a genuine issue of material fact exists for resolution necessitating a full trial on the merits. We think that their contention is sound.

The action below was commenced by Redfield against the Turners to recover $4,500 plus accrued interest on a promissory note, which he satisfied by payment to the Security National Bank for and on behalf of the Turners. By answer, the Turners denied liability and counterclaimed as mentioned. Following his reply to the counterclaim, and after affidavits of witnesses and depositions of the parties were secured, Redfield moved for a summary judgment in his favor against the claim for relief asserted by the Turners in their counterclaim. In resisting that motion, the Turners relied upon the same depositions and upon the counter-affidavit of Otis Turner. The lower court was persuaded that a genuine issue of material fact did not exist as to the issues raised by the counterclaim and the reply thereto, and entered summary judgment for Redfield on that phase of the litigation. This appeal followed. For reasons hereafter expressed, we cannot agree with the lower court.

In reviewing the propriety of a summary judgment, we must accept as true all evidence favorable to the parties against whom judgment was entered. Catrone v. 105 Casino Corp., 82 Nev. 166, 414 P.2d 106 (1966); Franktown v. Marlette, 77 Nev. 348, 364 P.2d 1069 (1961); Parman v. Petricciani, 70 Nev. 427, 272 P.2d 492 (1954). Tested by this standard, there are genuine issues of material fact to be resolved at trial. A brief recitation of the stock transaction forming the basis for the counterclaim will reflect the verity of our conclusion.

In January 1961, the Turners visited Redfield at the Washoe County Jail. They were tenants and friends of his. At that time Redfield owned about 20 percent of the outstanding stock of Pacific American Fisheries Corporation. He told the Turners that the stock was going to increase in value and that he, Redfield, had approximately $25,000 in idle funds. Since the Turners had been trying to assist him and had made very little as tenants on his farm, he suggested that he invest his idle money for the Turners and purchase 1500 shares of stock of Pacific American Fisheries. When the stock was sold, the Turners would repay Redfield the amount invested plus interest and could retain the profit realized from the sale. The record may be read to suggest that the Turners would bear the loss should the stock decrease in value. The Turners accepted Redfield's proposal.

Redfield ordered 1500 shares of Pacific American Fisheries stock in the Turners' names. He then delivered two checks to Otis Turner, as payee, totaling $25,343.88, the exact sum needed to purchase the 1500 shares. Turner took the checks to a brokerage firm and purchased the stock. The certificates were issued in the Turners' names and delivered to them in February 1961. Some time later, Redfield told them that the stock might suddenly appreciate and that they should execute a stock power and have their signatures verified. They did as he suggested. Then in June 1961 Redfield advised them that

the stock was selling at $24 per share (it had been purchased at prices ranging from $16.50 to $16.75 per share) and should be sold. Otis Turner immediately delivered the stock, endorsed in blank, to Redfield to sell. Redfield did not sell it, but transferred the stock to his name and has since treated it as his own.

Shortly after Turner delivered the stock to Redfield for sale, Redfield asked him to work permanently at a lumber yard. When told by Turner that he could not do so, Redfield replied that the Turners' debt to him was so great that he would never be able to repay it by working on the ranch. When Otis asked what Redfield meant by that comment, he was told that he, Turner, owed Redfield the amount loaned him for the stock purchase.

The transaction is characterized by Redfield as the manifestation of a generous impulse on his part to help his friends; that an enforcible contract could not result because of the absence of consideration to support it. On the other hand, the Turners view the transaction as a loan of money by Redfield to them, which loan they were obligated to repay with interest. Should the stock depreciate they would stand the loss, and should it appreciate they would realize the gain pursuant to the understanding reached. If the Turners' point of view ultimately prevails, the doctrine of consideration does not bar them since Redfield received a benefit—the Turners' promise to repay the loan with interest—a legally sufficient consideration for Redfield's promise to make the loan. These opposite versions of the transaction—each finding support in the record, depending upon the interpretation to be accorded the evidence as a whole—show the existence of a genuine issue of material fact to be resolved after a full trial on the merits.

Other points were argued. However, it is apparent that none of them could have been the reason for the summary judgment entered below. Therefore, we shall not consider them.

Reversed.

COLLINS, J., and ZENOFF, D. J., concur.