GILBERT C. SMITH, Appellant, v. RECRION COR-
PORATION, a Delaware corporation, and KARAT,
INC., a Nevada corporation and wholly owned sub-
sidiary of Recrion Corporation, dba STARDUST
HOTEL and ALLAN D. SACHS, Respondents.

No. 7871

October 23, 1975                                    541 P.2d 663

[Rehearing denied November 21, 1975]

*Jolley & Urga,* of Las Vegas, for Appellant.

*George Rudiak, Chartered,* of Las Vegas, for Respondents.

## OPINION

By the Court, ZENOFF, J.:

Gilbert C. Smith, while employed as a keno writer by the Stardust Hotel in Las Vegas, conceived that a recreational

vehicle park constructed and operated as a part of the luxury hotel would be a profitable idea. After developing a brochure somewhat detailing his idea, he arranged for and had a meeting with Allan Sachs, General Manager of the Stardust, later to become President. The hotel was owned and operated by Recrion Corporation through its subsidiary Karat, Inc.

After presenting the idea to Sachs, Smith indicated that he desired to be compensated in the form of an unspecified amount of money or by participation in the venture in an executive capacity. Sachs expressed no interest in the proposal except to suggest that Smith contact him at a later date. Smith's subsequent attempts to meet with Sachs were unsuccessful and culminated in a note from Sachs' secretary stating simply that Mr. Sachs was not interested.

Two years later, the Stardust opened a recreational vehicle park known as "Camperland" adjacent to the hotel. The project had been initiated and carried forward by the Stardust Director of Public Relations, Dick Odessky.

After the opening of Camperland, asserting that the hotel had implemented his idea, Smith made several demands for compensation; all of which were refused. Finally, Smith requested a letter from Sachs acknowledging that the Camperland idea was his. The letter was never forthcoming. Smith sued for money damages, claiming he was entitled to compensation upon alternate theories of express contract, implied contract, contract implied in law (quasi contract), common law copyright and fraud. Smith appeals from the summary judgment granted in favor of respondents.

Although some of the facts set forth above are not uncontroverted, they have been construed in a manner most favorable to the appellant as required on an appeal from a summary judgment. Franktown v. Marlette, 77 Nev. 348, 364 P.2d 1069 (1961); Abbott v. Miller, 80 Nev. 174, 390 P.2d 429 (1964); Catrone v. 105 Corp., 82 Nev. 166, 414 P.2d 106 (1966).

1. The terms of an express contract are stated in words while those of an implied contract are manifested by conduct. Youngman v. Nevada Irrigation District, 449 P.2d 462 (Cal. 1969). Both types of contracts are founded upon an ascertainable agreement. Horacek v. Smith, 199 P.2d 929 (Cal. 1948). Here, there is no evidence that the parties expressly contracted for the purchase and sale of Smith's idea. Smith only alleged that he expected compensation, not that he was

promised compensation. See Alexander v. O'Neil, 267 P.2d 730 (Ariz. 1954).

In order to prevail on the theory of a contract implied in fact, the court would necessarily have to determine that both parties intended to contract, Horacek v. Smith, supra, and that promises were exchanged; the crucial promise being that of Sachs to compensate Smith. There is no evidence of conduct on the part of Sachs suggesting an intention to enter into a contract with Smith, nor any evidence from which it could be inferred that he promised to compensate Smith. Trujillo v. Chavez, 417 P.2d 893 (N.M. 1966); Texas Co. v. Forson, 167 P.2d 877 (Okla. 1946).

There being no evidence of contractual intent or the exchange of mutual promises, express or implied, there was no genuine issue of fact.

Prior to the time Smith and Sachs first met to discuss Smith's idea, Sachs had no knowledge of the purpose of the meeting. Smith's idea was entirely unsolicited and he voluntarily disclosed his idea before the subject of compensation had been discussed. Even if Sachs subsequently promised Smith compensation, the promise would be unenforceable for the reason that it would have been unsupported by consideration. Past consideration is the legal equivalent to no consideration. Murray v. Lichtman, 339 F.2d 749, 752 n. 5 (D.C. Cir. 1964). An abstract idea cannot be protected by an express or implied contract unless the contract was made before the disclosure of the idea. See e.g., Hampton v. LaSalle Hat Company, 88 F.Supp. 153 (S.D.N.Y. 1949); Oxenhandler v. Dime Savings Bank of Brooklyn, 227 N.Y.Supp.2d 642 (1962); Desny v. Wilder, 299 P.2d 257 (Cal. 1956).

2. Neither statutory nor common law copyright protects against the borrowing of ideas as distinguished from the expression of such ideas. 2 M.B. Nimmer, Nimmer on Copyright 715, § 166 (1975). Generally, abstract ideas will not be protected without a showing of "concreteness" and "novelty." Concreteness pertains to the developmental stage of the idea, i.e., the idea must be sufficiently developed as to constitute a protectable interest. An idea in order to meet the test of concreteness must be ready for immediate use without any additional embellishment. Nimmer, supra, at 750. Novelty pertains to originality and, in some jurisdictions, the innovative character of the idea. Nimmer, supra, at 719–20. The purpose of the test is to insure

that the idea merits protection: That it is "tangible" and would not exist but for the independent efforts of the author. See Belt v. Hamilton Nat. Bank, 108 F.Supp. 689 (D.C. 1952); Desny v. Wilder, supra.

Smith's idea does not meet the test of concreteness. His brochure was hardly capable of "immediate use without any additional embellishment." The most that can be said is that respondents may have gleaned the raw idea of a recreational vehicle park from Smith. However, to develop that idea to the point where it was ripe for implementation required extensive investigation, research and planning.

3. An idea must also meet the test of concreteness and novelty before its author is entitled to quasi contractual recovery. Smith is denied compensation on the theory of quasi contract for this reason and for the reason that the idea was entirely unsolicited. One who officiously confers a benefit on another is not entitled to compenstion therefor. Weitzenkorn v. Lesser, 256 P.2d 947 (Cal. 1953); Krisel v. Duran, 303 F.Supp. 573, aff'd, 424 F.2d 1367, cert. denied, 400 U.S. 964 (S.D.N.Y. 1969); Stein v. Simpson, 230 P.2d 816 (Cal. 1951).

4. Nor can Smith recover on the ground of fraud. As a necessary element of proving fraud Smith must show that he was deceived by false representations to the effect that he would receive compensation for disclosing his idea. It is clear from the record that his idea was unsolicited and voluntarily disclosed prior to any discussion of compensation by either party. All discussions regarding compensation were initiated by Smith. There was no fraud.

Summary judgment was appropriate. Affirmed.

GUNDERSON, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.