JAMES C. WARRINGTON, DBA JAMES C. WARRINGTON AND ASSOCIATES; JAMES McCOY, DBA McCOY-NEVADA REAL ESTATE; AND HARRY HUCKINS, Appellants, *v.* GENE EMPEY AND DENNIS TURNER, Respondents.

No. 8838

February 22, 1979                    590 P.2d 1162

*Donald W. Gilfillan,* Incline Village, for Appellants.

*Diehl, Recanzone & Evans,* Fallon, for Respondent Turner.

*Laxalt, Berry & Allison,* and *James T. Russell,* Carson City, for Respondent Empey.

## OPINION

*Per Curiam:*

On May 23, 1972, the owner of 210 acres of ranch property near Dayton, Nevada, entered into an exclusive written listing agreement with respondent Empey, a real estate broker. The agreement included a 10% broker's commission to be paid to Empey in the event of a sale as a result of his efforts. This agreement was cancelled by the owner on November 30, 1972.

Respondent Turner was interested in buying ranch property and, accordingly, on November 28, 1972, he contacted appellant Huckins, a real estate broker employed by appellant James C. Warrington. Since a fellow salesman, appellant McCoy, knew that Empey had a listing on the aforementioned property, he contacted Empey to arrange a viewing of this property. The three salesmen/brokers (Empey, McCoy and Huckins) and Turner all drove out to look at the property from a road bordering the property. During this viewing, McCoy and Huckins misrepresented to Turner the possible uses of the property. Empey corrected this misstatement. Thereafter, Turner, dissatisfied with appellants' handling of the matter, dealt directly with Empey, after first agreeing with Empey to satisfy his obligation to appellants.

In February of 1973, Turner, with Empey's assistance, made an offer for the property and paid $5,000 earnest money, but negotiations failed and Empey withdrew his services. Subsequently, on March 26, 1973, Turner negotiated an agreement to purchase the property and agreed to pay Empey 5% of the sales price as consideration for his services.

Appellants subsequently commenced this action seeking damages (1) from Empey for a breach of contract, and wilfull interference with their rights under the seller's listing agreement; (2) from Turner for interference with the co-brokerage contract; and, (3) from Empey and Turner for an alleged conspiracy to defraud appellants out of their share of the real estate commission. Additionally, Empey cross-claimed against Turner seeking a 5% broker's commission based upon an alleged breach of a written contract.

After a trial without jury, the district court concluded there was no contract between Empey and appellants and, accordingly, Empey was not obligated to pay appellants one-half of the real estate commission. The district court awarded Empey $9,500 based upon Turner's admitted liability.

Appellants contend that the district court erred in finding that there was no contract between appellants and Empey.

Essential to the creation of a contract, whether express or implied, is a manifestation, by the parties, of an intent to contract. *See* Smith v. Recrion Corp., 91 Nev. 666, 541 P.2d 663 (1975); Morgan v. Board of State Lands, 549 P.2d 695 (Utah 1976); Milone and Tucci, Inc. v. Bona Fide Builders, 301 P.2d 759 (Wash. 1956); Richards v. Kuppinger, 278 P.2d 395 (Wash. 1955). In an implied contract, such intent is inferred from the conduct of the parties, and other relevant facts and circumstances. Chandler v. Roach, 319 P.2d 776 (Cal.App. 1957). *See*

Martens v. Metzgar, 524 P.2d 666 (Alaska 1974); Ray F. Fischer Co. v. Loeffler-Green Supply Co. 289 P.2d 139 (Okla. 1955); Kilthau v. Covelli, 563 P.2d 1305 (Wash.App. 1977).

1. Appellants first argue that such circumstances may be found in the custom and usage of the real estate trade. However, while custom and usage may be used to establish the terms of a contract, it cannot create one where none existed. John I. Haas, Inc. v. Wellman, 186 F.2d 862 (9th Cir. 1951); Century Insurance Agency, Inc. v. City Commerce Corp., 396 P.2d 80 (Alaska 1964); Milone and Tucci, Inc. v. Bona Fide Builders, *supra;* Hanley v. March & McLennan-J.B.F. Davis & Son, 117 P.2d 69 (Cal.App. 1941).

2. Appellants argue, alternatively, that such conduct is evidenced by their act of procuring the buyer. If a real estate broker has been a procuring cause of a sale, he is entitled to his agreed commission, irrespective of who makes the actual sale or the terms thereof. Schneider v. Biglieri, 94 Nev. 426, 581 P.2d 8 (1978). While this court has acknowledged that the determination of who was a "procuring cause" is elusive, we have set forth some guidelines for the district courts to follow in making this factual determination. In Bartsas Realty, Inc. v. Leverton, 82 Nev. 6, 9, 409 P.2d 627, 629–30 (1966), we stated that:

> It is impossible to measure in quantitative units the efforts necessary to constitute "procuring cause." Suffice that on the one hand it is "conduct that is more than merely trifling." (Citation omitted.) Thus in non-exclusive situations, merely introducing the eventual purchaser is not necessarily enough. (Citations omitted.) The first broker still may be shown to have abandoned efforts or been helplessly ineffective. (Citations omitted.)

We find that there was sufficient evidence for the district court to determine that appellants, in simply introducing Turner to Empey, were not the procuring cause of the sale. *See* Schneider v. Biglieri, *supra.* Accordingly, the judgment of the district court is affirmed.[1]

---

[1]The Governor designated the Honorable Merlyn H. Hoyt, Judge of the Seventh Judicial District Court, to sit in the place of THE HONORABLE CAMERON M. BATJER, Justice, who was disqualified. Nev. Const. art. 6, § 4.