PALMER, Respondent, vs. SMITH, Appellant.

*September 15—October 3, 1911.*

*Assault and battery: Shooting person at charivari: Justification: Questions for jury: Evidence: Intent of person shot: Instructions to jury: Acts done "wantonly:" Punitory damages.*

1. In an action for injuries alleged to have been caused by a shot fired by defendant while plaintiff and others were at a charivari on defendant's premises, the evidence is *held* sufficient to warrant the jury in finding that defendant shot the plaintiff without justification.

2. It being alleged in the answer that plaintiff and those with him had conspired unlawfully to frighten and terrify defendant and his wife and to trespass on his premises, plaintiff was properly allowed to testify that he went to defendant's house to congratulate him and have a good time and with no intention of harming him or his wife or property.

3. Evidence that defendant's brother had told plaintiff that he and his companions would have to make more noise to get defendant out, was competent as having a bearing upon plaintiff's purpose in going upon defendant's premises and as being a part of the transaction.

4. An instruction that, although plaintiff and his companions were trespassers and, if their purpose was to disturb defendant by violent or tumultuous noises, they were also an unlawful assembly, "nevertheless such a situation would not of itself justify or excuse the defendant in wantonly firing a loaded gun or rifle into the assembly or at a member thereof," was not erroneous as against the defendant.

5. The use of the word "wantonly" in the foregoing and other instructions is criticised as being too favorable to defendant in that it gave the jury to understand that a wanton act may be justified.

6. "Wantonly" in such a connection means intentionally, without reasonable cause, and in a lawless, destructive spirit. A wanton act cannot be a lawful act.

7. In such a case defendant would not be justified in shooting merely because it appeared to him to be necessary in defense of himself, his family, and dwelling, if upon the facts and circumstances as they appeared at the time there was no reasonable ground to apprehend a design upon the part of those assembled to do great personal injury or to commit a felony.

8. Punitory damages may be awarded for the wanton shooting of a person taking part in a charivari.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge.  *Affirmed.*

This action was brought to recover damages for personal injuries alleged to have been sustained by plaintiff in consequence of a shot fired by the defendant while plaintiff and others were at a charivari on the premises of the defendant on the 23d day of June, 1910.  It is charged in the complaint that the defendant wantonly shot the plaintiff in the leg, and that the bullet penetrated plaintiff's leg below the knee, cutting, tearing, bruising, and lacerating the muscles, tendons, and arteries.  The complaint further charges that the plaintiff sustained damages on account of pain, suffering, loss of time, and expense sustained by him in consequence of the injury, and lays his damages at $5,000.  The answer denies generally the allegations of the complaint and sets up among other things that the plaintiff and others confederated and conspired unlawfully for the purpose of frightening and terrifying the defendant and his wife and to trespass on his premises, and that if the plaintiff was injured he was injured otherwise than by the defendant and by his own negligence. The jury returned a general verdict in favor of the plaintiff assessing his compensatory damages at $175 and punitory damages at $50.  Judgment was rendered upon the verdict in favor of the plaintiff, from which judgment this appeal was taken.

*Charles E. Pierce,* for the appellant.

*J. J. McManamy,* for the respondent.


KERWIN, J.  The defendant was married June 16, 1910, and at the time of the injury complained of was living on a farm, occupying the south half of the farm house, and his brother, who was also a married man, occupying the north half with his wife and one child four years old.  Each occupied his half exclusively.  On the night in question at about 11 p. m. the plaintiff and some fourteen others went to the house of the defendant to charivari him.  When the crowd

arrived on defendant's premises he and his wife had retired and were in a small room on the second floor which faced the east toward the highway, with two windows facing east and one south. It was a bright moonlight night. When plaintiff and some of the crowd were near the house they made some noise so that defendant heard them, got up, took his rifle, and shot through one of the windows at least four times in rapid succession, and it is claimed that one of the bullets took effect in plaintiff's leg, causing the injuries complained of. The errors assigned may be classified under the following heads: (1) In refusing nonsuit and directed verdict; (2) in the admission of evidence; (3) in instructions to the jury; and (4) in refusing to instruct the jury as requested.

1. It is claimed by the appellant that a nonsuit should have been granted, and that the court, having denied a nonsuit, should have directed a verdict for defendant. This position is taken on the ground that there was no evidence that defendant shot the plaintiff, and further that the defendant was in the lawful defense of himself and family and had a lawful right to do what he did. The evidence tends to show that on the night of June 21, 1910, a crowd assembled at the premises of the defendant (the plaintiff not being present) to charivari the defendant and made some noise, but did not succeed in getting any response from defendant; that the party went there to have a good time and congratulate the defendant; that the brother of defendant told one of the party that they must make more noise in order to get defendant out; that there was no intention to injure defendant, his wife, or property on the night of June 23d; that there were no threats made, but some noise before the shooting; that the bullet from one of the shots fired by defendant struck plaintiff; that defendant was angry, "mad clear through;" that he took no aim when he fired the shot, but intended to hold the gun pretty near level; intended to drive the crowd away; that defendant was told that the boys were coming on the night in question.

and said "all right, let them come." Defendant testified: "*Q.* When you shot you were mad, were you? *A.* Yes, sir, I was angry. *Q.* You lost your temper, didn't you? *A.* Yes, sir. *Q.* Excited and mad all through? *A.* Yes, sir." He further testified that he heard a little noise, enough so that he got up and looked out to see what it was. Those assembled were farmers and boys working for farmers in the vicinity.

It is unnecessary to prolong this opinion by a discussion of the evidence under this head. The evidence was ample to warrant the jury in finding for the plaintiff, therefore no error was committed in denying the motions for nonsuit and directed verdict.

2. Error is assigned upon the admission of evidence. The plaintiff was allowed to testify over objection as to his purpose in going on defendant's premises on the night of June 23d. He testified that he went there to have a good time and to congratulate the defendant if he came out, and with no intention of harming the defendant, his wife, or property. Also he was permitted to testify over objection that he talked with defendant's brother, who told plaintiff that they would have to do different; they would have to get disks and pound them, and more guns, to get him out. It is argued by counsel for appellant that the evidence was incompetent for the reason that the plaintiff's intention was immaterial, and that the statement of defendant's brother was hearsay, therefore incompetent. The issue as to plaintiff's intention to injure the defendant is squarely raised by the answer. It is charged that the plaintiff with others entered into a conspiracy to injure and terrify defendant and his wife and unlawfully trespass on the premises of the defendant, and for the purpose of violating the law of the state of Wisconsin against rioting and disorderly conduct. Evidence respecting the purpose and intention of the plaintiff under the issues was competent and his testimony as to his own intent was competent.

The evidence of what defendant's brother said and his talk with plaintiff also had a bearing upon the plaintiff's purpose and intention in going upon the premises of the defendant, and was a part of the transaction and competent. *Holtz v. State,* 76 Wis. 99, 110, 44 N. W. 1107; *Bates v. Ableman,* 13 Wis. 644; *Roebke v. Andrews,* 26 Wis. 311; *Eastman v. Bennett,* 6 Wis. 232; *Mack v. State,* 48 Wis. 271, 4 N. W. 449. The truth of the statement of defendant's brother was not the material point, but the fact that such statement was made about the time of the charivari. The objection that the evidence was hearsay was not good. Whether the evidence of the statements of defendant's brother was incompetent is not very material, since such statements in evidence could not have prejudiced the defendant.

3. Error is assigned on the charge. Exception is taken to the following:

"Nevertheless, such a situation would not of itself justify or excuse the defendant in wantonly firing a loaded gun or rifle into the assembly or at a member thereof."

The ground of objection to this part of the charge is that it takes from the jury a question of fact as to whether or not the situation was such as to justify the defendant, relying upon *Higgins v. Minaghan,* 76 Wis. 298, 45 N. W. 127. But when taken in connection with the part of the charge immediately preceding it, it is plain that it could not have prejudiced the jury. The court said:

"It is undisputed in this case that the plaintiff and his companions at the time he was injured were trespassers upon the defendant's premises; and if you find that at the time of the shooting he and his companions were assembled and had entered upon the defendant's premises for the purpose of disturbing the defendant by violent or tumultuous noises, then they also were an unlawful assembly."

Then follows the part excepted to. Also in another part of the charge the court told the jury that if they found that defendant fired the shot which struck the plaintiff and in

doing so acted wantonly, they must determine whether or not such act was justified under the law. Further, the court in charging the jury respecting unlawful assemblies said that in case of a riot or unlawful assembly each individual who by his presence or otherwise participated therein is equally guilty with the others.

The use of the word "wanton" or "wantonly" is criticised by counsel for appellant, and we think properly; but the answer to this is that the charge in that regard was too favorable to the defendant, because it recognized and clearly gave the jury to understand that an act may be wantonly done and at the same time be justified. The defendant in the case at bar might have been justified if the acts on the part of the plaintiff and others as they appeared to defendant were such as to have reasonably justified him in believing that the firing of the shot was necessary for the protection of himself, his wife, or property, but he would not be justified in wantonly firing at the plaintiff or into the crowd, or in recklessly doing so without regard for the lawful rights of others. A wanton act cannot be a lawful act. "Wantonly" means without reasonable excuse, and implies turpitude. An act to be done wantonly must be done intentionally with design and without excuse and under circumstances evincing a lawless, destructive spirit. *Everett v. Receivers of R. & D. R. Co.* 121 N. C. 519, 27 S. E. 991; *North Carolina v. Vanderford,* 35 Fed. 282; *Branch v. State,* 41 Tex. 622. "Wantonly" is also defined as a reckless disregard of the lawful rights of others. *Werner v. State,* 93 Wis. 266, 67 N. W. 417. Such a degree of rashness as evinces a total want of care, . . . or willingness to destroy, although destruction itself may have been unintentional. *Stucke v. M. & M. R. Co.* 9 Wis. 202; *Lockwood v. Belle City St. R. Co.* 92 Wis. 97, 65 N. W. 866; *Astin v. C., M. & St. P. R. Co.* 143 Wis. 477, 128 N. W. 265.

The following is excepted to:

"A man may use reasonable and necessary force to eject a trespasser who intrudes upon his premises against his known

commands, but he cannot use wanton or unnecessary violence in so doing, or he becomes liable to respond in damages for any injury which he may thereby inflict."

The complaint as to this part of the charge is that it is misleading—not applicable to the case. We discover no error in this part of the charge.

The following is excepted to:

"If, however, a wanton act is committed by anybody while resisting an attempt to commit felony upon him or his dwelling, or other property, or in the lawful defense of his person, or of his wife and children, or others under his legal protection, and there shall be reasonable ground to apprehend a design to commit felony upon him or his dwelling, to do some great personal injury, and there shall be reasonable cause for believing there was imminent danger of such design being accomplished, then such wanton act is justified in the law."

The criticism on this part of the charge is that it takes from the jury the question as to whether or not the defendant acted honestly in defense of himself, his family and dwelling, and that in cases like the present it is not necessary that the defendant should have reasonable ground to apprehend a design on the part of those assembled to commit a felony. There was no error that the defendant can complain of. This part of the charge is too favorable to the defendant, because it authorizes the jury to justify a wanton act. Moreover, the criticism on the charge, that all that is necessary is that defendant believe that he have reasonable ground, etc., is not the law. True, there is language used in *Higgins v. Minaghan,* 76 Wis. 298, 45 N. W. 127, to the effect that the defendant is justified in acting for his defense according to the circumstances "as they appear to him." But we do not understand that it was the intention of the court in that case to lay down any such general rule, nor do we understand it to be the law that the defendant would be justified in shooting on the arbitrary ground alone that it appeared to him necessary, if upon the facts and circumstances of the case, as they

appeared at the time, there was no reasonable ground for such apprehension.

Exception is taken to the following:

"You should bear these instructions in mind and consider them in connection with the evidence as to the acts and intentions of the plaintiff and his companions, so far as they were known to the defendant, as well as the character of the individual members comprising the group, and their disposition toward him, whether friendly or otherwise, so far as known to him, in determining whether or not, at the time of the shooting of the plaintiff, the defendant had reasonable ground to apprehend a design to do him or his wife great personal injury, or to commit a felony against his property, and whether he had reasonable cause for believing that there was imminent danger of such design being accomplished."

We find no prejudicial error in this part of the charge.

Exception is also taken to the following:

"You may further, if you find a verdict for the plaintiff, award to him, in addition to compensatory damages, some sum in the nature of punitory damages, if you believe from the evidence punitory damages should be awarded."

The objection to this is that it is inapplicable, because there is no evidence to warrant punitory damages. We have referred to the allegations of the complaint heretofore, also to some of the evidence, and are satisfied that the jury was warranted in finding punitory damages. A part of the charge not excepted to correctly defines the rule respecting the awarding of punitory damages. In fact, the charge goes generally on the idea, and the jury must have so understood it, that it was necessary to find that the shooting was done wantonly or the plaintiff would not be entitled to recover any damages. We think the whole charge was very favorable to the defendant, and the jury could not have been misled by it to his prejudice.

Exception is taken to the refusal of the court to charge as

requested by counsel for defendant.    The points raised by the several requests have been substantially covered by what has been heretofore said.

We find no reversible error in the record.

*By the Court.*—The judgment is affirmed.

BARNES, J., took no part.