252 P.2d 571

**SCOTT v. SCOTT et al.**

No. 5589.

Supreme Court of Arizona.
Jan. 19, 1953.

Rehearing Denied Feb. 20, 1953.

Moore & Romley and Wm. P. Mahoney, Jr., of Phoenix, for appellant.

Evans, Hull, Kitchel & Jenckes, of Phoenix, for appellees.

LA PRADE, Justice.

This case presents an appeal from a judgment on a verdict denying plaintiff relief for personal injuries suffered in a pedestrian-automobile truck collision, and from an order denying plaintiff-appellant's motion for a new trial.

Plaintiff, a woman of 69 years at the time of the accident, was knocked down and seriously injured by a Chevrolet pickup truck belonging to the defendant, Sam Scott, and driven by his employee, Vernon Murphy, a boy of 16 years of age. The accident happened on the south side of West Washington Street, where it is intersected from the north by 11th Avenue, making what is known as a "T" intersection, since 11th Avenue does not extend through to the south. Plaintiff, at the time of the accident, was walking in an unmarked crosswalk which is defined by Section 16(a) of the Uniform Act Regulating Traffic on Highways in Arizona, Chap. 3, Laws 1950, 1st S.S., as "That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs * * *". Washington Street at the place under consideration is paved from curb to curb, a distance of 60 feet. It has two parking lanes, one on either side, and four driving lanes—two for eastbound traffic and two for westbound traffic. Each parking lane and each driving lane is approximately 10 feet wide. Plaintiff was endeavoring to cross Washington Street from the south to the north at the intersection. Mrs. Scott testified that before she stepped off the curb she looked to the west to see if there was any oncoming traffic; that after stepping off the curb she again looked to the west, at which time she saw two automobiles abreast and which appeared to her to be about 300 feet away, approaching at a speed which she was not able to estimate. Presumably one of these cars was the truck driven by defendant Murphy, who was driving in the passing lane. The "other" car was proceeding in the slow lane, and at the time or shortly before the impact was a car-length ahead of Murphy and to his right. Murphy testified that he was driving at a speed of 25 miles per hour, and that when his front bumper came abreast of the rear bumper of the "other" car he for the first time saw the plaintiff, who stepped out into his path from in front of the "other" car. Murphy maintained that he was keeping a lookout for pedestrians but admitted he did

not see plaintiff until she stepped out about a car-length in front of him; that he "hit the brakes", but was unable to stop in such distance as to avoid running into and against plaintiff although he, by his sudden stop, avoided running over her.

Murphy's testimony was given by way of deposition under cross-examination. He was not present at the trial and defendants offered no testimony on the question of liability. Such testimony as there was on this phase was contained in the deposition of Murphy, the testimony of plaintiff, and an officer who came to the scene after the accident. Murphy admitted he was not wearing glasses at the time of the accident as he was required to do by his driver's license, but claimed that he could see a pedestrian "quite a distance, at least a block".

Due to a moderate rain then prevailing, plaintiff stated that she was carrying her opened umbrella up in one hand and a satchel in the other. She was not able to identify in which hand the umbrella was carried but did admit that she was shielding her left side, the direction from which Murphy was approaching. Plaintiff also admitted that she stopped in the street to look for cars that might be coming from an undetermined or non-existent side street or alley, and was not thinking about the two vehicles which she knew were approaching her. She further testified that just as she stepped across the white line into the passing lane, she took her "third look", and there saw the pickup truck almost upon her.

At the close of the evidence plaintiff moved for a directed verdict on the subject of liability, leaving for the jury only the question of the amount of damages, on the ground that there was no dispute in the evidence of the fact that plaintiff's injuries were proximately caused by the negligence of defendants. The motion was denied.

At the instance of the defendants and without objection on the part of the plaintiff, the court instructed the jury on the law of contributory negligence.

The court refused to give plaintiff's submitted instruction defining wanton negligence, which was to the general effect that the defendants could not avail themselves of the defense of contributory negligence if they were guilty of wanton negligence which proximately caused, or contributed to, the injuries sustained by the plaintiff. This instruction was objected to on the ground that there was no evidence of wanton negligence on the part of the defendants and presumably this was the reason for the court's ruling.

Plaintiff presents four assignments of error:

1. The refusal of the trial court to direct a verdict in her favor on the subject of liability;

2. The denial of her motion for a new trial for the asserted reason that the verdict and judgment were not justified by the evidence;

120

3. Refusal to give the instruction on wanton negligence; and

4. Refusal to grant a new trial for alleged misconduct on the part of defendants' counsel in argument to the jury.

The facts relative to this last assignment will be stated later.

It occurs to us that the first two assignments are in reality the same, in that they both involve the proposition that the verdict was not justified by the evidence. In support of their first two assignments of error plaintiff insists that the record discloses that defendant Murphy was guilty of at least five distinct acts of negligence, to-wit:

1. Driving at a reckless speed under the circumstances;

2. Driving at a greater speed than would permit him to stop, as it might be necessary to stop to avoid a collision;

3. "Failing to yield the right of way to plaintiff who had the same under the facts by virtue of Section 88(a) of the Uniform Act Regulating Traffic on Highways (she was walking in an unmarked crosswalk)";

4. "Failing to slow down for the intersection as required by Section 56(c) of the Uniform Act Regulating Traffic on Highways"; and

5. Failure to maintain a proper lookout.

It is argued that plaintiff's injuries were proximately caused by the negligence of the defendant Murphy. Plaintiff does not, however, go so far as to say which one of these acts was the proximate cause of the accident.

It is trite to say that the plaintiff cannot recover damages for any negligence unless it appears that the negligence of the defendant was the sole proximate cause of the injuries. The motion for a directed verdict could not have been granted unless the trial court was of the opinion that no reasonable man could come to the conclusion that defendant Murphy was free from negligence, or, if negligent, that no reasonable man could conclude that such negligence was not the sole proximate cause of the accident. We feel that the claimed acts of negligence all presented questions of fact for the jury, and the findings thereon should not be disturbed unless it can be said that all reasonable persons could reach but one conclusion contrary to the jury's finding. As we interpret the evidence the jury might well have found that Murphy was guilty of all of the claimed acts of negligence, but in order to fix liability on defendants it would have had to have gone further and found that one or all of the acts of negligence was the proximate cause of plaintiff's injuries to the exclusion of any contributory negligence on the part of the plaintiff. It has been repeatedly said by us that courts cannot weigh the evidence and set aside the verdict merely because the jury could have drawn different conclusions or inferences,

or merely because courts feel that other inferences or other conclusions would be more desirable. Atchison, T. & S. F. R. Co. v. Hicks, 64 Ariz. 15, 165 P.2d 167.

■ ■ The rule employed by the court in Calumet & Arizona Mining Co. v. Gardner, 21 Ariz. 206, 187 P. 563; Arizona Power Co. v. Hayes, 24 Ariz. 322, 209 P. 280, and in Tom Reed Gold Mines Co. v. Morrison, 26 Ariz. 281, 224 P. 822, was that questions of negligence and contributory negligence are for the courts only when the facts are undisputed and lead to but one conclusion. The case of Bowers v. J. D. Halstead Lumber Co., 28 Ariz. 122, 236 P. 124, likewise stands for the proposition that it is only when facts are such that all reasonable men must draw the same conclusion, that negligence is a question of law for the court. Under these rules of law, in order for this court to upset the jury's verdict, it would be necessary to rule, not only that the jury and court below came to an unreasonable conclusion, but also that no reasonable person could have agreed with that conclusion.

■ Plaintiff is in no position to now complain about the giving of an instruction on contributory negligence to which she made no objection. Counsel attempts to excuse this failure by suggesting that such an objection would have been empty and futile since the trial court had previously denied her motion for a directed verdict on the question of liability. It is true that plaintiff's motion indicated that she did not concede any negligence on her part as an issue, and that the court was fully aware of her position on the instructions. This presents tenable argument but does not comply with the rule that objections to instructions are required to avoid a waiver. Rules of Civil Procedure, rule 51, A.C.A. 1939, Sec. 21–1019. Tipton v. Burson, 73 Ariz. 144, 238 P.2d 1098. Nevertheless, we will consider the issue briefly by pointing out that where the evidence is not conclusive that plaintiff was not contributorily negligent, a verdict for the defendant will not be disturbed on appeal. Dennis v. Stukey, 37 Ariz. 299, 294 P. 276. With this rule in mind we point out that the evidence viewed in the light most favorable to support the verdict indicates that any one of the following acts or omissions could have constituted negligence on plaintiff's part:

1. Crossing a busy street with an umbrella in a position obscuring her vision of traffic;

2. Crossing a busy street in the face of oncoming traffic;

3. Taking her attention off this traffic;

4. Not keeping a proper lookout for her own safety;

5. Stepping into the path of the oncoming truck.

If there is any basis at all for a finding that a plaintiff was contributorily negli-

gent, the issue is exclusively for the jury. Dennis v. Stukey, supra.

After the trial judge has given the verdict his approval by denying a new trial, we must accept the verdict as the final and conclusive finding of the facts, if there is any substantial evidence to support it, and it will not be disturbed on appeal. Dunseath v. Tucson Golf & Country Club, 51 Ariz. 14, 74 P.2d 43.

We will now treat plaintiff's assignment of error that the trial court erred in refusing to give an instruction on wanton negligence. It must be remembered that it is error for a court to instruct on a theory where there is no evidence to support it. Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325. An instruction on wanton negligence would have been misleading, and might have induced the jury to believe that they could find defendant Murphy guilty of wanton negligence. We believe the trial court properly refused to give plaintiff's instruction on wanton negligence for the reason that the evidence did not reasonably tend to establish wanton negligence. We have heretofore defined wanton negligence in the cases of Womack v. Preach, 63 Ariz. 390, 163 P.2d 280; Butane Corporation v. Kirby, supra; Barry v. Southern Pac. Co., 64 Ariz. 116, 121, 166 P.2d 825. Murphy's conduct showed no reckless disregard for plaintiff's safety nor did the evidence show

that he knew, or had reason to know, of facts which would lead him as a reasonable man to realize that his conduct not only created an unreasonable risk of bodily harm but involved a high degree of probability that substantial harm would result. Wanton negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain terms. It is "in the air", so to speak. It is flagrant and evinces a lawless and destructive spirit. Palmer v. Smith, 147 Wis. 70, 132 N.W. 614, 617. As we view the evidence the jury might well have found defendant Murphy guilty of simple negligence of any or all of the acts complained of, but his so-called acts of negligence had none of the attributes of wantonness as heretofore more specifically defined in the cases above referred to.

The argument to the jury, assigned as erroneous and prejudicial, is as follows:

"We come to the very important subject that concerns us all and concerns the Judge, that is, were the defendants negligent as alleged in the complaint. That is something we can all understand—were the defendants negligent as alleged in the complaint.

"First of all it is certainly clear that Mr. Scott who sits over here was not negligent, he wasn't in the automobile, he didn't have anything to do with it,

so when they say that the defendants were negligent they are talking about Mr. Murphy."

It is claimed that this argument was against the court's instructions and tended to induce the jurors to disregard the court's instructions on agency and the rule of respondeat superior. What counsel intended and, in fact, did say, was that the basis of liability, if any, was the act or omission of the defendant Murphy. The only possible objection to counsel's argument would be that it did not go further and explain in so many words that Murphy's negligence, if any, was imputable to Scott. The instructions of the court made this amplification and was supplemented by argument of counsel. We see nothing unfair or prejudicial in the statement.

A diligent search of the entire record and a careful consideration of plaintiff's briefs on appeal has not convinced us that any prejudicial error was committed by the trial court, and as a consequence the judgment must be affirmed, and it is so ordered.

STANFORD, C. J., UDALL and WINDES, JJ., and KELLY, Judge, Superior Court, concur.

Judge PHELPS, being unable to take part in the disposition of this case, the Hon. Henry C. KELLY, Judge of Superior Court of Yuma County, participated in his stead in the determination of this appeal.