584 P.2d 1156

Richard A. CULLISON, Appellant,

v.

CITY OF PEORIA, a body politic, Louis H. Johnson, Appellees.

No. 13160.

Supreme Court of Arizona, In Division.

Sept. 15, 1978.

Charles Christakis, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Killingsworth and Ben C. Thomas, Phoenix, for appellees.

HOLOHAN, Justice.

This case involves an appeal by Richard A. Cullison (plaintiff-appellant) from the granting of a summary judgment in favor of the City of Peoria, et al., defendants-appellees, by the Superior Court. We have jurisdiction of this case under 17A A.R.S. Sup.Ct.Rules, rule 47(e)(5).

During the early morning hours of March 11, 1974, the Peoria Police Department received a report of an armed robbery that had taken place at a U–Totem store located at 84th Avenue and Grand Avenue in Peoria. The manager of the store had been assaulted with an iron pipe during the robbery and was subsequently taken to the hospital. Later that day she was interviewed by an officer of the Peoria Police Department at which time she described her assailant as being a white male in his early twenties between five feet eight and five feet nine inches tall and approximately 160 to 165 pounds. She told the police that she distinctly remembered that the assailant was wearing pink pants, a white belt and a khaki shirt. The store manager also said that during a brief conversation with her assailant the attacker told her that he had been a dispatcher for the El Mirage Police Department. The investigating officer, after talking to the nurse on duty, confirmed the fact that the victim's mental condition was good and that her eyesight, memory and reasoning were normal at the time he took the information.

Subsequently the investigating officer checked with the El Mirage Police Department and found that there were two individuals who fit the description given him by the victim. One individual was the plaintiff-appellant Richard Cullison, who was not employed at El Mirage at the time of the incident. The El Mirage police dispatcher specifically remembered that he had seen Cullison wearing pink pants and a white belt on at least one prior occasion.

Although eight photographs, including one of Richard Cullison, were submitted to the victim in the hospital, she was unable to make any positive identification of the assailant at that time.

On March 25, 1974, the Maricopa County Sheriff's Department issued a summons for Cullison to appear for identification purposes at a lineup the following day. At the lineup, the victim positively identified Cullison as the assailant. As a result of this identification, Cullison was detained in the Peoria City Jail while Chief Johnson took the victim to the County Attorney's office for the purpose of having her sign a formal complaint. Upon the filing of the complaint, Justice of the Peace John Snure issued a warrant for Cullison's arrest. Cullison was thereafter brought before Judge Snure for a preliminary hearing. At the preliminary hearing, sufficient probable cause was found to mandate the binding over of Cullison for trial. Accordingly, Cullison was charged with the crime and released after he posted bond.

Subsequently, another individual confessed to having committed the crime, and the charges were dropped against Cullison at that time.

Nearly one year later, on February 26, 1975, Cullison brought this action against the City of Peoria, Police Chief Louis H. Johnson, the store manager, and U–Totem Markets of Arizona, Inc. The complaint set forth causes of action against all defendants for false imprisonment, malicious prosecution, defamation and gross negligence. On April 29, 1976, the trial court granted Defendants City of Peoria and Louis John-

son's motion for summary judgment as to all counts, specifically holding that no just cause existed for delay, thus bringing the decision within the ambit of 16 A.R.S. Rules of Civil Procedure, rule 54(b). This appeal followed.

## I. *GROSS NEGLIGENCE*

■ Plaintiff has contended that the defendants were guilty of gross negligence in arresting him for the crime of armed robbery and in thereby causing him to be imprisoned. To sustain his position the plaintiff has to show that there was a fact question on the issue of gross negligence. Ordinarily the police may rely on information received from an informant shown to be reliable and trustworthy to establish probable cause for arrest. *Ker v. California,* 374 U.S. 23, 34–35, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726, 739 (1963); *State v. Pederson,* 102 Ariz. 60, 62, 424 P.2d 810, 812 (1967).

■ In order for the plaintiff to raise sufficient material facts to rebut the defendants' motion for summary judgment, he was required to show that the conduct of the police was outside the duty and standard of care required of them in that they had reason to believe that the information on which they based their arrest, the eyewitness identification, was not trustworthy.

■ During his deposition the appellant advanced his belief, based upon his own perceptions, and apparently upon hearsay from other individuals, that the mental state of the victim was less than competent before and at the time of the identification. Police Chief Johnson at his deposition, stated that his perception of the victim's emotional condition, based upon his own personal past experience with her, was that such condition was very stable. The appellant's offered hearsay, speculation and opinion do not constitute competent evidence to rebut the fact that the police action was based upon their belief that the testimony of the eyewitness was reliable.[1]

1. We note from the record that the plaintiff filed no affidavits in response to the motion for summary judgment. It is, of course, generally held that the failure to file affidavits when a

■ It is well established that the opponent of a motion for summary judgment does not raise an issue of fact by merely stating in the record that an issue of fact exists, but rather he must show that competent evidence is available which will justify a trial on that issue. Hearsay or speculation is not competent evidence. *Schock v. Jacka,* 105 Ariz. 131, 460 P.2d 185 (1969); *Crocker v. Crocker,* 103 Ariz. 497, 446 P.2d 226 (1968); *Masden v. Fisk,* 5 Ariz.App. 65, 423 P.2d 141 (1967).

Chief Johnson's uncontroverted affidavit recites the fact that the victim identified Cullison as the perpetrator of the armed robbery after two separate lineups were held. The importance of accuracy in identification was strongly stressed to her. It was only after she gave assurances to the police present that she was certain Cullison was in fact the assailant that she was taken to the County Attorney where she signed a complaint against Cullison. After the complaint was signed, the police appeared before Justice of the Peace John J. Snure where they obtained a warrant for Cullison's arrest. Following his arrest appellant was taken before Justice of the Peace Snure for a preliminary hearing at which time the magistrate determined that sufficient probable cause existed to hold Cullison for the crime as charged.

■ Based upon the record in this case, we believe that the identification of the eyewitness provided the police with sufficient probable cause upon which to make their arrest. It is the function of a police officer to appraise the type and nature of the offense charged, the substance and apparent reliability of the complaint made to

him, and the identity of and knowledge possessed by the complainant, together with other relevant facts and circumstances. *Morrison v. United States,* 491 F.2d 344, 346 (8th Cir. 1974).

■ Probable cause, by its very nature, implies the use of probabilities. For such determination there can be no formula, because each case is decided on its own facts and circumstances. *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374, 382 (1931). Moreover, when the police make an arrest based upon probable cause, it is not material that the person arrested may turn out to be innocent, and the arresting officer is not required to conduct a trial before determining whether or not to make the arrest. *Linn v. Garcia,* 531 F.2d 855, 861 (8th Cir. 1976); *Morrison v. United States,* 491 F.2d 344, 346 (8th Cir. 1974); *Lathers v. United States,* 396 F.2d 524, 531–32 (5th Cir. 1968).

■ Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court. *Slade v. City of Phoenix,* 112 Ariz. 298, 541 P.2d 550 (1975); *Murphy v. Russell,* 40 Ariz. 109, 9 P.2d 1020 (1932). In this case, the issue of probable cause was in fact determined by the magistrate at the preliminary hearing.[2]

We find no evidence of any material fact presented by the plaintiff in this record to suggest that the police in any way departed from the standard of care mandated by the United States and Arizona Constitutions, or the Arizona Rules of Criminal Procedure before or after appellant's arrest.

---

motion for summary judgment is filed is not in and of itself a fatal error. *Nemec v. Rollo,* 114 Ariz. 589, 592, 562 P.2d 1087, 1090 (1977). On appeal a court is, of course, required to read the entire verified record. *See Eastwood Electric Co. v. R. L. Branaman Contractor, Inc.,* 102 Ariz. 406, 409, 432 P.2d 139, 142 (1967). In this case the only verified part of the plaintiff's record was his deposition. There was no sufficient objective credible evidence found therein to support the plaintiff's contentions.

**2.** Because appellant did not transmit a copy of the transcript of the record of the preliminary

hearing to this court, we are unable to give any consideration to appellant's attempt to recite the events which occurred during the course of the preliminary hearing. Moreover, where an incomplete record is presented to an appellate court, the missing portions of that record are to be presumed to support the action of the trial court. *State v. Villalobos,* 114 Ariz. 392, 561 P.2d 313 (1977); *State v. Bojorquez,* 111 Ariz. 549, 535 P.2d 6 (1975).

Since we find that the police were not guilty of misconduct or negligence, a claim of gross negligence will not lie. This court has in the past stated that wanton (or gross) negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain terms. It is "in the air," so to speak. It is flagrant and evinces a lawless and destructive spirit. *Scott v. Scott,* 75 Ariz. 116, 122, 252 P.2d 571, 575 (1953); *Palmer v. Smith,* 147 Wis. 70, 75, 132 N.W. 614, 617 (1911). No showing of such a flagrant violation was made by the plaintiff in this case. The ruling of the trial court was correct.

## II. *MALICIOUS PROSECUTION AND FALSE IMPRISONMENT*

Because malicious prosecution and false imprisonment are legally related claims in this case we will consider them together.

As we have stated in the past, the essential elements of an action for malicious prosecution are 1) a criminal prosecution, 2) that terminates in favor of plaintiff, 3) with defendants as prosecutors, 4) actuated by malice, 5) without probable cause and 6) causing damages. *Slade v. City of Phoenix,* 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975); *Overson v. Lynch,* 83 Ariz. 158, 317 P.2d 948 (1957).

A separate tort, but a closely related one to malicious prosecution, is false imprisonment. False imprisonment can be defined as the detention of a person without his consent and without lawful authority. *Slade v. City of Phoenix, supra; Swetnam v. F. W. Woolworth Co.,* 83 Ariz. 189, 318 P.2d 364 (1957). The essential element necessary to constitute false imprisonment is unlawful detention. The key element of malicious prosecution is malice, which can be inferred from a lack of probable cause.

Just as a detention which occurs pursuant to legal authority such as a valid warrant is not an unlawful detention, *Catrone v. 105 Casino Corp.,* 82 Nev. 166, 414 P.2d 106 (1966), the existence of probable cause to institute an action is a complete defense to malicious prosecution without regard to the existence of malice. *McClinton v. Rice,* 76 Ariz. 358, 265 P.2d 425 (1953); *Murphy v. Russell,* 40 Ariz. 109, 9 P.2d 1020 (1932).

As we have stated, the police on the record before us were at all times material to this action proceeding pursuant to valid legal process and probable cause.

The conclusory allegations made by the plaintiff in this case are not sufficient to raise any material fact to controvert our conclusion based on the material facts at hand. We note that the summons included as part of the record indicates that Cullison was in fact served with it at 8:45 the morning of March 26, 1974 immediately prior to his participation in the lineup. The appellant's allegation that he was not served with a warrant at the time of his arrest is not a significant objection since it is the law in this state that an arrest can be made on probable cause without a warrant. A.R.S. §§ 13–1403(1) and 13–1408.[3]

We therefore find no merit in appellant's contention that the police proceeded in the absence of legal process or a finding of probable cause. Police Chief Johnson's perception of his legal obligation in this instance as stated during his deposition was accurate and succinct:

" . . . I had a court order. Had I not followed the order of the court, I would have been in [prison] with him [Cullison] in a police uniform . . . "

---

**3.** § 13–1403. Arrest by officer without warrant

A peace officer may, without a warrant, arrest a person:

1. When he has probable cause to believe that a felony has been committed and probable cause to believe the person to be arrested has committed the felony.

§ 13–1408. Method of arrest by officer without warrant

When making an arrest without a warrant, the officer shall inform the person to be arrested of his authority and the cause of the arrest, unless the person to be arrested is then engaged in the commission of an offense, or is pursued immediately after its commission or after an escape, or flees or forcibly resists before the officer has opportunity so to inform him, or when the giving of such information will imperil the arrest.

■ Considering the offered facts, we agree with the ruling of the trial court that there was no showing of illegal detention or lack of probable cause. Therefore, the denial of plaintiff's claims of false imprisonment and malicious prosecution by summary judgment was correct.

## III. DEFAMATION

The plaintiff contended, and the defendants have admitted, that the defendants reported to the newspapers the fact that the plaintiff had been arrested and charged with the crime of armed robbery.

■ The uncontroverted facts are that after a validly constituted legal proceeding, the plaintiff was ordered bound over for trial on a charge of armed robbery. Under the circumstances, the report of that fact given to the newspapers was true. It has long been the law in this state that truth is a complete defense to an action for defamation.[4] *Central Arizona Light & Power Company v. Akers,* 45 Ariz. 526, 46 P.2d 126 (1935). The granting of the motion for summary judgment on this issue was therefore clearly correct.

We find that the ruling of the trial court as to all counts was correct and we affirm the judgment.

STRUCKMEYER, V. C. J., and HAYS, J., concur.

---

**4.** Because the record of the preliminary hearing is not before us, (see note 1 *supra*), we have no knowledge as to whether statements made to the newspapers were in fact made by individuals who were witnesses at the preliminary hearing. If the statements were made by witnesses at the preliminary hearing, we would agree with the appellees' position that such statements, even if defamatory, were entitled to a privilege, which privilege would have been absolute. Restatement (Second) of Torts § 588 (1977); *Todd v. Cox,* 20 Ariz.App. 347, 512 P.2d 1234 (1973).