8 F.3d 25
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gregory W. BOUDETTE, Plaintiff-Appellant,
v.
William Curtis SINGER; City of Cottonwood, AZ, a Municipal
Corporation, Defendants-Appellees.
 No. 92-15431.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 13, 1993.
Decided Sept. 17, 1993.
 
 Before: SNEED, POOLE and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Gregory W. Boudette appeals the district court's grant of summary judgment in his 42 U.S.C. § 1983 action in favor of the City of Cottonwood, Arizona, and William C. Singer, a Cottonwood police officer. Boudette's § 1983 claims stem from two incidents: his arrest by Singer on April 20, 1990, for a number of civil traffic offenses; and his arrest by Singer on June 26, 1990, for driving under the influence. Boudette was convicted of the charges arising from the February arrest, but was acquitted of the charges of driving under the influence. He brought suit under § 1983 in district court alleging false arrest, malicious prosecution, destruction of evidence, and failure to give notice before his license was suspended. Boudette also maintained Singer was not certified as a peace officer under Arizona law at the time of the first arrest in April.
 
 
 3
 The district court granted summary judgment in favor of Cottonwood and Singer on all of these claims. We review de novo the district court's grant of summary judgment. Schneider v. TRW, 938 F.2d 986, 989 (9th Cir.1991). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. Id. "A party opposing a summary judgment motion must produce specific facts showing there remains a genuine factual issue for trial and evidence 'significantly probative' as to any [material] fact claimed to be disputed." Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983) (quotations omitted).
 
 
 4
 * RES JUDICATA
 
 
 5
 Boudette contends the district court erred when it dismissed three counts of his complaint under the doctrine of res judicata, because appellant had fully litigated those claims in Arizona state courts.[1] Collateral estoppel is the doctrine that "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 467 n. 6 (1982). This doctrine applies to state court judgments in federal court. "Congress has commanded federal courts to give state court judgments the same full faith and credit as they would receive in the courts of the state, 28 U.S.C. § 1738." Derish v. San Mateo-Burlingame Bd. of Realtors, 724 F.2d 1347, 1349 (9th Cir.1983). The collateral estoppel effect of a state court decision can also bar the relitigation of the same issues in actions under 42 U.S.C. § 1983 in federal court. Allen v. McCurry, 449 U.S. 90, 95 (1980).
 
 
 6
 Under Arizona law, collateral estoppel "bars a party from relitigating an issue identical to one which has previously been litigated to a determination on the merits in another action." Gilbert v. Bd. of Medical Examiners, 745 P.2d 617, 622 (Ariz.App.1987). Under Arizona law, collateral estoppel bars subsequent relitigation when "the issue is actually litigated in the previous proceeding, there is a full and fair opportunity to litigate the issue, resolution of such issue is essential to the decision, there is a valid and final decision on the merits, and there is a common identity of the parties." Id.
 
 
 7
 The district court properly dismissed Boudette's claims in Count II of his amended complaint that Singer filed a false report and did not have probable cause to arrest him. The district court determined these claims were barred by res judicata, because that issue had already been decided by the Arizona trial court. We agree. Boudette was convicted by a magistrate for the offenses for which he was arrested and the report was written. Under Arizona law, "where a person is convicted in the magistrate court ... probable cause is conclusively established as a matter of law." Creamer v. Raffety, 699 P.2d 908, 914 (Ariz.App.1984) (citing Wisniski v. Ong, 382 P.2d 233 (Ariz.1963). This is true even if the magistrate court conviction is later reversed on appeal. Id. Therefore, if allegations of false arrest are based on a lack of probable cause, the conviction in magistrate court conclusively establishes the existence of probable cause and is dispositive of the false arrest claims. Id. at 915. Arizona courts have applied this collateral estoppel effect to bar subsequent litigation of this issue for causes of action under Arizona law and 42 U.S.C. § 1983. Id. at 915-916.
 
 
 8
 Because we are bound to give the same collateral estoppel effect to the magistrate court judgment as would be given in Arizona courts, we must consider the conviction in magistrate court to conclusively determine that Singer had probable cause to arrest Boudette on April 20 and thus affirm the district court's dismissal of this claim under res judicata.[2]
 
 
 9
 The district court's application of res judicata to Boudette's other two claims stemming from the April 20 arrest, however, appears to be inappropriate. In Counts I and III of the amended complaint, Boudette claims his arrest on April 20, 1990 was invalid because the arresting officer had not yet been certified as a law enforcement officer and thus could not make an arrest under Arizona law. The district court determined that issue was likewise barred by res judicata, because it had been "fully litigated in state court." That issue was not litigated in magistrate's court, because Boudette alleges he was not apprised of Singer's certification status until after that trial had been completed.[3]
 
 
 10
 Appellant did raise this issue on appeal to the Arizona Superior Court, which rejected Boudette's appeal and affirmed the conviction in a minute order on May 16, 1991. However, the order does not give the basis for the Superior Court's decision.[4] The Supreme Court of Arizona declined to exercise jurisdiction over the case. Our review of the brief Boudette submitted before the Superior court indicates that, although he did raise the certification issue on appeal to that court, he did so indirectly. Appellant's certification argument was framed in terms of a violation of Brady v. Maryland, 373 U.S. 83 (1963), and Boudette argued his conviction should be overturned because the city prosecutor failed to inform him that Singer was not certified at the time of the arrest.[5] It is thus impossible to determine whether the Superior Court's decision was based on a determination Singer was in fact certified at that time or whether the decision was based merely on the conclusion no Brady violation had occurred. Therefore, we cannot determine whether resolution of the certification issue was central to the outcome of that decision.
 
 
 11
 For res judicata to apply, we must be convinced Boudette had an opportunity to "fully and fairly" litigate the certification issue, and that resolution of the certification issue was central to the outcome. Gilbert, 745 P.2d at 622. We are not so convinced and determine the district court erred in dismissing Counts I and III under res judicata.
 
 
 12
 Moreover, we cannot, on the record before us, determine as a matter of law whether Officer Singer was certified at the time of the April arrest. Under Ariz.Comp.Admin.R. & Regs. R13-4-103, a peace officer must have "certified status" before being assigned to duty. According to the deposition of Mel Risch of the Arizona Law Enforcement Officer Advisory Council (ALEOAC), which certifies peace officers under Arizona law, an officer achieves "certified status" when he has successfully completed the required training and examinations and holds a valid appointment as a peace officer. At that point, the officer is merely waiting for ALEOAC to perform the administrative task of actually issuing a certificate to that officer.
 
 
 13
 Boudette asserts Singer had not fulfilled all of the requirements for certification at the time of the arrest. The record indicates Singer had in, ALEOAC's determination, successfully completed all but one of the tests necessary for certification. However, in a letter ALEOAC sent to the Cottonwood Police Department on April 20, 1993, the date of Boudette's first arrest, the agency stated it was "expecting test results for the firearms qualifications to be sent to our office soon." Evidently those test results were provided, and Singer received formal certification status on April 26, 1990. We are unsure whether ALEOAC must receive the results of all testing before "certified status" can be achieved, and nowhere in the record does ALEOAC state its policy on that issue. Because ALEOAC had still not received the results of all testing as of the date of the April 20 arrest, we cannot determine Singer's certification status at that time. On remand, the district court could resolve this issue as a matter of law.
 
 II
 DESTRUCTION OF EVIDENCE
 
 14
 Boudette argues the district court erred in dismissing his § 1983 claims against the defendants for their alleged destruction of evidence relevant to his second trial for driving under the influence in June 1990. Appellant maintains the defendants deliberately destroyed an audio dispatch recording, which would have assisted Boudette in his defense. He also alleges Singer destroyed a videotape recording supposedly made of Boudette's refusal to consent to an Intoxilyzer, which appellant maintains would actually have shown him consenting to that test.
 
 
 15
 To prevail on a Section 1983 claim, the plaintiff must allege a deprivation of a constitutionally protected interest. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir.1988). Federal Due Process rights are implicated when a defendant is denied access to certain exculpatory evidence. Miller v. Vasquez, 868 F.2d 1116, 1119 (9th Cir.1989). However, the Supreme Court in Arizona v. Youngblood, 488 U.S. 51 (1988), held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 58.
 
 
 16
 We agree with the district court's grant of summary judgment on this issue. Boudette failed to allege any facts which indicate the destruction of the dispatch tape was the result of "bad faith." The Cottonwood Police Department established that such tapes were routinely destroyed after thirty days and that this tape was destroyed in accordance with that policy. Boudette has not presented any evidence, except his speculation, that the tape was destroyed by the officers in anything but good faith and in accord with their normal practice. California v. Trombetta, 467 U.S. 479, 488 (1984).
 
 
 17
 Boudette has not shown the likelihood that a videotape of his refusal to submit to an Intoxilyzer even exists, much less that it was destroyed in bad faith by the Cottonwood police. Appellant claims a tape was made merely because he saw an officer working with a video camera in the station at that time. He alleges no other specific facts that a tape was created, or that such a tape was deliberately destroyed or withheld in bad faith. Boudette's unsubstantiated suspicions regarding the creation of a videotape are insufficient to withstand summary judgment.
 
 
 18
 We also note that any possible due process violation was cured by the trial court's instruction to the jury that they could infer from the destruction of the audio tape that its contents would have benefitted the defendant. State v. Willits, 393 P.2d 274, 279 (Ariz.1964). Boudette was also acquitted and thus cannot allege the destroyed evidence deprived him a of a fair trial.[6]
 
 III
 NOTICE OF PRE-SUSPENSION HEARING
 
 19
 It is unclear to us exactly what due process violations Boudette alleges occurred as a result of Cottonwood's failure to provide him with notice of the suspension of his right to drive. A person whose license will be suspended by the state of Arizona for failure to consent to an alcohol test has the right to a pre-suspension hearing, and the license suspension is stayed pending the result of that hearing. Ariz.Rev.Stat.Ann. § 28-691G. Arizona law also requires the licensee be given notice of the pending suspension and his right to a pre-suspension hearing. Ariz.Rev.Stat.Ann. § 28-691E.
 
 
 20
 Boudette claims his due process rights were violated because he received no such pre-suspension notice. However, he appealed his license suspension to the Arizona Superior Court on precisely those grounds and had his suspension overturned. The Superior Court recognized the lack of notice failed to comply with Arizona law and remanded the case so that appellant could be given notice and an opportunity to be heard before his right to drive was suspended. Boudette has now been given a full pre-suspension hearing, and he does not dispute the results of that hearing before this court. Contrary to appellant's assertions that he was denied due process, he in fact availed himself of the process available under Arizona law and had his initial suspension overturned. He has no due process claim in federal court.[7]
 
 IV
 MALICIOUS PROSECUTION
 
 21
 Boudette argues the district court erred in granting summary judgment in favor of appellees in Boudette's claims of malicious prosecution resulting from his arrest and subsequent acquittal on the drunk driving charges arising from the incident in June 1990. Because this is an appended state tort claim, we apply Arizona law. As the district court recognized, probable cause to arrest is a complete defense to a claim of malicious prosecution. Cullison v. City of Peoria, 584 P.2d 1156, 1160 (Ariz.1978). "Probable cause to make an arrest exists when the arresting officer has reasonably trustworthy information of facts and circumstances sufficient to lead a reasonable man to believe an offense is being or has been committed and that the person to be arrested committed it." Hansen v. Garcia, Fletcher, Lund and McVean, 713 P.2d 1263, 1265 (Ariz.App.1985).
 
 
 22
 Appellees are correct in maintaining the existence of probable cause under a given set of facts is a question of law to be determined by the court. Cullison, 584 P.2d at 1159; Hockett v. City of Tucson, 678 P.2d 502, 505 (Ariz.App.1983). However, if there is a dispute as to the factual basis underlying the probable cause determination, that is a factual matter for the jury or factfinder to resolve. Id.; Sarwark Motor Sales, Inc. v. Woolridge, 354 P.2d 34, 36 (Ariz.1960). The court must "tak[e] the evidence in the strongest manner in favor of plaintiff" and determine whether "as a matter of law the facts so proved constitute probable cause."[8] Id.
 
 
 23
 Our examination of the facts as alleged by Boudette indicate there is a triable issue as to whether Singer had probable cause to arrest appellant for drunk driving. In its determination probable cause existed to make the arrest, the district court recited only those facts alleged by Singer as the basis for the arrest. Boudette disputes the validity of those allegations. Specifically, appellant denies having consumed any alcohol that evening. In contrast, the district court considered only Singer's allegation that there was "the strong smell of alcohol about the plaintiff." Boudette also maintains he suffered a concussion as a result of the accident he alleges happened that evening. It is not clear from the evidence whether Boudette would be able to show he suffered noticeable head injuries which should have been apparent to an arresting officer. Such injuries would have mitigated the probable cause determination and explained why Boudette was "slumped over the steering wheel" and was "staggering or [unable] to walk without assistance."
 
 
 24
 Because these facts, viewed in the light most favorable to plaintiff, would indicate a lack of probable cause to arrest, the district court erred in determining that the existence of such probable cause barred the claim of malicious prosecution as a matter of law. Although we may consider it unlikely appellant will prevail on this issue, the factual basis for probable cause must be decided by the finder of fact. We vacate the district court's grant of summary judgment on this issue and remand for a factual determination on the issue of probable cause to arrest and malicious prosecution.[9]
 
 
 25
 We also vacate the district court's award of attorneys' fees to Cottonwood and Singer. The district court should reconsider the amount and award of such fees in light of this disposition and the final outcome of appellant's § 1983 claims.
 
 
 26
 AFFIRMED in part and REVERSED and REMANDED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although the district court used the general term "res judicata," which is now applied generally to both claim and issue preclusion, the doctrine being applied is actually "issue preclusion," which is more properly termed "collateral estoppel."
 
 
 [2]
 We, like the Creamer court, decline to accept Boudette's argument that the magistrate's determinations should be disregarded because of the conflict of interest inherent in the magistrate's position as a city employee. Creamer, 699 P.2d at 914
 
 
 [3]
 We note that, even if that issue had been decided in magistrate's court, its preclusive effect would be weak. Although Arizona courts have applied the collateral estoppel effects of convictions in magistrate's court on the issue of probable cause, they have been less willing to give full preclusive effect to the results of magistrate trials involving, as here, civil traffic offenses. "Collateral estoppel effect is generally denied to traffic convictions and minor offenses under accepted common law principles." State v. Walker, 768 P.2d 668, 671 (Ariz.App.1989). The Arizona court reasoned the collateral estoppel effect of such proceedings was weaker because the lower stakes in such proceedings do not provide an incentive for the parties to litigate "with the same vigor," and because the statutory scheme for such trials requires them to be informal, "quasi-administrative" proceedings, without many of the protections and procedural rules of full trials. Id. at 671-672. Thus we are not convinced the federal district court would have been obligated to give full preclusive effect in federal court to the determinations of the municipal magistrate in civil traffic court
 
 
 [4]
 The order states in its entirety: "It is ordered affirming the judgment of the Trial Court and remanding this matter to the Cottonwood Municipal Court for imposition of sentence."
 
 
 [5]
 Boudette's argument heading for the certification claim reads: "The defendant was prejudiced by the failure of the state to disclose that Singer was not a certified police officer at the time of the arrest."
 
 
 [6]
 We also note that appellant repeatedly asserts Singer perjured himself at trial regarding these occurrences. It is well settled that plaintiffs may not bring suit under 42 U.S.C. § 1983 against police officers based on allegedly perjurious testimony at trial or during pre-trial proceedings. Briscoe v. Lahue, 460 U.S. 325, 326 (1983)
 
 
 [7]
 It is equally unclear to us how the Georgia district court opinion cited by appellant applies to his situation. In Smith v. Comm'r of Georgia Dept. of Public Safety, 673 F.Supp. 446 (M.D.Ga.1987), the district court granted injunctive relief under § 1983 because the Georgia statutory scheme provided insufficient notice and a pre-suspension hearing which was procedurally infirm. In contrast Boudette makes no allegations the Arizona statutes applicable to license suspension violate due process, but seeks compensatory damage for Cottonwood's failure to provide him with notice, an oversight which was remedied by the Arizona courts
 
 
 [8]
 Appellant erroneously argues the jury determined Singer lacked probable cause because it acquitted him of the charges stemming from the arrest. Contrary to appellant's arguments, a subsequent acquittal does not indicate the arrest was made without probable cause. "[W]hen the police make an arrest based upon probable cause, it is not material that the person arrested may turn out to be innocent, and the arresting officer is not required to conduct a trial before determining whether or not to make an arrest." Cullison, 584 P.2d at 1159. This is so because the level of proof necessary for probable cause to arrest is substantially less than the burden of proof to convict in criminal proceedings
 
 
 [9]
 Appellees raised for the first time at oral argument the bar of res judicata on this issue. Appellees maintain the matter of probable caus was conclusively determined by the magistrate in a probable cause hearing. Our examination of the record reveals no information concerning such a probable cause hearing. Moreover, appellees did not raise this issue in the court below nor did the district court base its dismissal of the malicious prosecution claim on res judicata. Res judicata is an affirmative defense which is ordinarily waived if not specially pleaded in district court. State of Nevada Employees Ass'n, Inc. v. Keating, 903 F.2d 1223, 1225 (9th Cir.), cert. denied, 498 U.S. 999 (1990); Kern Oil & Refining Co. v. Tenneco Oil Co., 840 F.2d 730, 735 (9th Cir.), cert. denied, 488 U.S. 948 (1988); Fed.R.Civ.P. 8(c). Furthermore, we will not examine an issue which is raised for the first time in oral argument. United Ass'n Local 342, AFL-CIO v. Valley Engi75 F.2d 611, 614 n. 5 (9th Cir.1992); United States v. Sitton, 968 F.2d 947, 959 (9th Cir.1992), cert. denied, 113 S.Ct. 1306 (1993). After remand, however, the district court may allow appellees the opportunity to formally plead the defense of res judicata on this issue